GEORGE B. CALDER *vs.* HELEN M. CURRY *et als.*

Public Statutes R. I. cap. 189, § 2, charges the personalty of a decedent with his debts, etc., and, in case of insufficient personalty, his realty, "unless the deceased has otherwise directed by his last will."

*Held*, that the word "directed" did not necessarily mean an express direction in terms. It is sufficient if the direction is clearly implied in the whole testamentary instrument.

*Held*, further, that the statute is merely declaratory of the common law.

A testator having considerable debts gave to his wife all his personalty, "for her own absolute use and disposal forever." He then devised his realty in trust, with full power in the trustee to lease, mortgage, and sell. He then provided that if his wife should die before him, "then the personal estate given to her . . . shall, after the payment of my debts, . . . be paid over . . . to the trustees" of the above-named trust.

*Held*, that, as between the widow and the devisees under the will, the personalty should be exonerated from the payment of the testator's debts.

BILL IN EQUITY for administration.

*February* 6, 1892.  TILLINGHAST, J.  This is a suit in equity to marshal and settle the estate of Aaron B. Curry, late of the city of Providence, deceased.  The facts set forth in the bill, in so far as the same are pertinent to the present inquiry, are, *first*, that the said Aaron B. Curry died on the tenth day of January, A. D. 1891, leaving a last will and testament, which has been duly admitted to final probate, and now remains on record in the Municipal Court of said city; *second*, that said Aaron B. Curry left debts largely exceeding in amount the total value of his personal estate, but seized and possessed in fee simple of real estate in said city of Providence more than sufficient to make up the deficiency of

his personal estate for the payment of the same, and of his funeral expenses, and the expenses of settling his estate ; *third*, that among the debts left by him, and payable from his estate, is a promissory note for $9,000, besides interest, held by the Citizens' Savings Bank of said Providence, and secured by a mortgage made by him upon sundry parcels of real estate, and other promissory notes held by the High Street Bank of said city, aggregating in amount the sum of $8,200 ; besides interest and for the payment of which, one hundred and thirty-two shares of the capital stock of said High Street Bank, standing in the name of said Curry upon the books of said bank at the time of his decease, are by and under the act of incorporation of said bank pledged and charged, and upon a part of which last-named notes, viz., upon such notes to the aggregate amount of $3,600, the complainant is the accommodation indorser or guarantor for said Curry, and as such is, as he claims, entitled to have said shares of stock, so far as needed, first applied to the payment of said notes, or otherwise to have said notes paid out of said estate, to exonerate him from liability therefor.

But the respondent, Helen M. Curry, widow of Aaron B., claims not only to the contrary thereof, but also that, under said will, she is entitled to the whole of the personal estate of her said husband, including said bank stock, absolutely for her own use, free and discharged from his debts ; and that such debts, and his funeral expenses, and the expenses of settling his estate, should and must be paid out of his real estate, to the exoneration of his personal estate therefor ; while the complainant, as executor and trustee under said will, claims that the personal estate should be first applied, in due course of administration thereof, to the payment of the same, to the exoneration of said real estate therefrom.

The only question now before us in the case is, whether the personal estate bequeathed by said Aaron B. Curry to his widow is exonerated by his will from the payment of debts and funeral and administration expenses.

The complainant contends that under said will the debts of the testator are not made a charge upon the real estate, and hence that the personal estate must be first applied in the due course of administration to the payment of the same, to the exoneration of the real estate therefrom.

The respondent, Helen M. Curry, on the other hand, contends that under said will, said debts and expenses are made a charge upon the residuary trust estate created by said will, and that this must first be exhausted before resorting to property given to and accepted by the widow in lieu of dower.

The rule of construction, which obtains at common law, in a case of this sort, as stated by Lord Eldon, in *Bootle* v. *Blundell*, 1 Meriv. 192, 219, a leading English case upon the question under consideration, cited by the complainant, is as follows : " I can find no rule deducible from all that has been said on the subject but this (which appears to be a rule supported by all the cases taken together), namely, that since it has been laid down that express words are not necessary to exempt the personal estate, there must be in the will that which is sometimes denominated ' evident demonstration,' sometimes ' plain intention' and ' necessary implication,' to operate that exemption. This much can be collected from the cases ; but when you proceed farther, and inquire what it is that constitutes this evident demonstration, plain intention, or necessary implication, it does appear to me that Lord Alvanley is right when he says, ' You are not to rest on conjecture, but the mind of a judge must be convinced that he is deciding according to what the testator intended.' The expression, ' necessary implication,' is frequently applied to cases between a devisee and heir-at-law ; and yet there is hardly a case decided against an heir-at-law where the implication upon which it was so decided was of absolute necessity. It is but a loose way of defining this expression to say that the intention must be so probable that the judge cannot suppose the contrary ; and it seems strange to lay down as a rule that express words shall not be required, but yet that there must be expressions tantamount to express words. . . . I take it that this is what will be found to be the result of all the cases, that the judge is in every instance to look at the whole of the will together, and then ask himself whether he is convinced that it was the testator's intention to exempt his personal estate." And he afterwards adds : " It is not by an intention to charge the real, but by an intention to discharge the personal estate that the question is to be decided."

The rule as above set forth is too well settled to require the citation of authorities in support thereof.

Applying this test or these tests, then, to the will before us, taken in connection with the facts set forth in the bill, does it show that the testator intended to exonerate his personal estate from the payment of his debts?

It will be seen that under this will the debts of the testator are not expressly made chargeable upon any particular part of his estate.

The first clause, taken by itself, simply directs that the testator's debts, funeral expenses, and expenses of administration be paid by his executors.

The personal estate of the deceased being primarily liable for the payment of his debts, *Potter* v. *Brown*, 11 R. I. 232, 234, it follows that, whether with or without a provision in the will like the one mentioned, the personal estate should be first applied to the payment thereof, unless the will as a whole, taken in connection with all the circumstances of the case, *Chapin* v. *Hill*, 1 R. I. 446, 451; *Perry, Adm'r*, v. *Hunter et als.* 2 R. I. 80, 83; *Quimby* v. *Frost*, 61 Me. 77, 81, clearly shows that it was the intention of the testator to exonerate the same from such liability.

. By the second clause thereof he gives to his wife " all family stores, household furniture, and household effects whatsoever, all wearing apparel, jewelry, and other articles of use or ornament, all bank stock or money on deposit, wheresoever the same may be, and generally all the personal estate of every name and nature whatsoever that I may have, or own, or be entitled to at the time of my decease, to be for her own absolute use and disposal forever."

He then adds to this a bequest of the proceeds of a policy of life insurance, in the sum of $1,100, and a devise of his homestead estate for life, or so long as she shall remain his widow, and in the clause next following, says : " I declare the foregoing legacy and devise to my said wife to be in lieu of her dower out of my estate."

The testator then devises all the rest, residue, and remainder of his real estate to his said wife Helen, and to his son-in-law, the complainant, in trust for his children and grandchildren, with full power to lease, mortgage, and sell and convey the same, or any part thereof, as they may deem advisable.

By the fifth clause of his will he provides that, " in case of the

death of my said wife in my lifetime, then the personal estate given and bequeathed to her by the second item of this will shall, after the payment of my debts and funeral expenses, be paid over by my executors to the trustees or trustee, for any time being, under the fourth item thereof, to be by them applied and appropriated in equal shares to the persons hereinbefore named, or, in case of the death of any of them leaving no issue living, to the survivor of them, in the manner indicated hereinbefore for the appropriation of the trust estate."

We think it very clearly appears from this clause, taken in connection with the provisions previously cited, that it was the intention of the testator to discharge his personal estate from all liability for the payment of his debts and funeral expenses in case his wife survived him, but not otherwise.

The express provision for the payment of his debts out of his personal estate, *in case of his surviving her*, taken in connection with the second and third clauses before referred to, shows by implication that, in case he should *not* survive her, the opposite of this direction should prevail ; viz., that said debts and expenses should not be paid from his personal estate, but that it should then " be for her own absolute use and disposal forever."

The phrase, " *then* the personal estate given and bequeathed to her by the second item of this will," is significant, and shows that the testator had in mind the fact that he had given it to her absolutely in case she survived him ; and that, as it was to go elsewhere in case she did not survive him, *then* he wished it to go charged with the payment of his debts. In other words, the testator said in effect : " I give all of my personal estate unconditionally to my wife if she survives me, but if not, then to my other devisees after the payment of my debts therefrom." Had he intended to make the bequest to his wife subject to the payment of his debts, we think he would have said so in terms, either in the first or second clause of his will, so long as he made it so chargeable by the fifth clause in disposing of it to others.

Furthermore, the fact set out in the bill, that the debts of the testator at the time of his decease largely exceeded in amount the total value of his personal estate, strengthens the view which we have taken as to the proper interpretation of said will.

The testator must have known at the time of the making of his will of the existence of the nine thousand dollar mortgage to the Citizens' Savings Bank referred to in the bill, as said mortgage was made in 1877, while said will was not made until 1880.

Whether his indebtedness to the High Street Bank in the sum of $8,200 existed at the time of the making of said will does not appear.

But even assuming that it did not, and that the mortgage debt above mentioned was the extent of his liabilities, yet, had he supposed that his personal estate was to be used in the payment of this debt, it is highly improbable that he would have formally and specifically bequeathed it to his wife, taking pains to enumerate the various kinds thereof, and to provide that it was " to be for her own absolute use and disposal forever," and also to declare that such a precarious bequest, together with a life estate in his homestead, was to be in lieu of her dower in his estate.

We think it fair to infer that the testator supposed and intended that said mortgage debt should be paid out of the real estate by which it was secured.

But the complainant contends that under the provision of Pub. Stat. R. I. cap. 189, § 2, there must be something more than the " evident demonstration," the " plain intention," or the " necessary implication " of the courts, in order to exonerate the personal estate. " For these, at the best, are but deductions drawn by the court of what it supposes the testator to have intended; and fall far short of the testator's own *direction, instruction, command,* which this statute requires." Said statute is as follows: " The personal estate shall stand chargeable for such expenses, charges, and debts in the first instance, and the real estate for all the same which the personal estate shall be insufficient to satisfy, unless the deceased has otherwise directed by his last will and testament."

The only question with regard to this statute is as to the meaning and force to be given to the word " directed." Must it be held to mean an express direction in terms, or may it be satisfied by plain implication thereof, deduced from the whole instrument?

The definition of the word as given by Webster is, " to order ;

to instruct; to point out a course of proceeding with authority; to command."

But direction may be given, or a course of proceeding may be pointed out with authority in a will by implication as certainly as by explicit instruction. And clear implication of the testator's intention is as binding upon the court as his express direction.

If this is not so, since the passage of said statute the primary and familiar rule for the construction of wills, viz., that the intention of the testator as gathered from the entire instrument must govern, *Watson* v. *Woods*, 3 R. I. 226; *Rogers* v. *Rogers*, 11 R. I. 38, 72; *Popkins et al.* v. *Sargent et als.* 10 Cush. 327, is materially modified thereby.

We do not see that the statute referred to has modified the rule, or that it is anything more than a declaration of the common law upon the subject in question. It therefore furnishes no aid in the interpretation of the will before us. See *Potter* v. *Brown*, 11 R. I. 232, and *Woonsocket Inst. for Savings* v. *Ballou*, 16 R. I. 351, both decided since the passage of said statute in its present form, as to a charge upon real estate by implication.

The complainant refers us to the case of *Rogers* v. *Rogers*, 1 Paige, 188, in support of his position that, under a will like the one before us, the personal property must first be resorted to for the payment of debts. What the will was in that case does not appear from the report, except in a very general way. By reference to a former case involving the same will, *Rogers* v. *Rogers*, Hopkins, 515, we find that it was materially different from the one under consideration. The testator in that case, after making certain specific devises of real estate to his two sons, and after several other specific devises of real property and bequests of personal estate, devised and bequeathed all the residue of his estate, real and personal, to his seven children then living, to be equally divided between them, share and share alike. There was nothing to show that the testator intended to exonerate the personal property from the payment of his debts, except that it was specifically devised. This, of itself, is clearly insufficient to exonerate it. Furthermore the bequest was not to a widow in lieu of dower, nor did it contain any language showing that the personal estate was " to be for her (his) own absolute use and disposal

forever," as in the case before us.   See remarks of Lord Eldon as to the significance of the phrase " for her own use," in *Bootle* v. *Blundell*, 1 Meriv. 192, 225.

The doctrine announced in that case, therefore, viz., that " if the testator specifically bequeaths his chattels to one person and devises his real estate to another, without any directions as to which property shall be appropriated to satisfy an existing judgment against him, the personal property must first be applied to that object," while doubtless a correct statement of the law, yet is not pertinent to the case at bar because, as we have already ascertained, the testator in this case did give direction by implication that his debts were not to be so paid.

In the case of *The Matter of the City of Rochester*, 110 N. Y. 159, 166, the disposing clause in the will was as follows : " After all my lawful and just debts are paid and discharged, I give and bequeath unto my wife, Emily C. Smith, one equal one third of all the personal property of which I may die seized, and the use or income from one third of my real estate, during the term of her natural life."   Then followed a clause giving the residue of the testator's real and personal estate to his two children equally, one half to go to his son absolutely, and the other half in trust for the maintenance of his daughter.

The court said : " Courts should be slow to construe an intention to charge the payment of debts upon a devise of real estate, from the use in a will of formal words, or in the presence of commonly employed phrases.   Of such a case this seems a fair illustration.   For, beyond the opening words of the will, 'after all my lawful and just debts are paid, I give, etc., to my wife,' . . . the instrument concededly is devoid of any expression or declaration by the testator of intention as to the mode of payment of his debts. . . . If we except the formal words with which this will opens, the testator's language furnishes no inference or clue of intention."   We can see no similarity between that case and the one before us.

In *Stevens and Stevens* v. *Gregg*, 10 Gill & J. 143, the question raised was, whether the legacies were made a charge upon the real estate.   The court said : " In this case it is, we think, very clear that there is nothing in the language or disposition of the

will from which an inference can be drawn that the testator intended to charge the real estate in the hands of his devisee with the payment of these legacies."

The cases of *Ancastor* v. *Mayer*, 1 Bro. Ch. 454; *Tait* v. *Lord Northwick*, 4 Ves. Jun. 816, and *Hartley* v. *Hurle*, 5 Ves. Jun. 540, were each considered by Lord Eldon in *Bootle* v. *Blundell*, *supra*, and evidently aided him in formulating the rule of construction above quoted. We find nothing in any of them which militates against the position we have taken in this case. In *Collis* v. *Robins*, 1 DeG. & Sm. 131, the Chancellor merely decided that under the will in that case, and under the rule of Lord Eldon in *Bootle* v. *Blundell*, which he adopted *in totidem verbis*, it was not clear that it was the testator's intention to exonerate his personal estate. We do not see that the doctrine urged by the defendant, that a widow taking a bequest in lieu of dower is to be regarded as a purchaser, and for that reason entitled to preference over other legatees or devisees, *Howard* v. *Francis*, 30 N. J. Eq. 444; *State et al.* v. *Steele's Adm'r*, 64 Ala. 438, 462, sheds any light upon the proper interpretation of the will. *Margaret Hall's Case*, 1 Bland Ch. Md. 203; *Borden* v. *Jenks*, 140 Mass. 562. For the reasons above given we are of the opinion that, as between the widow and the other devisees under said will, the personal estate of the testator should be exonerated from the payment of his debts.

*James Tillinghast & Theodore F. Tillinghast*, for complainant.

*Joseph C. Ely*, for respondent, Helen M. Curry.

*James M. Ripley*, for respondents, the High Street Bank and the Citizens' Savings Bank.