277 P.2d 299

Saidee LAMPHEAR and Irene Prefontaine, Plaintiffs-Appellants,

v.

Lessing ALCH, Mary Alch, Lorena J. Herl, formerly known as Lorena J. Stallard, The Unknown Heirs of the Following Deceased Persons, to-wit: John Joseph Coryell, William Garner Lamphear, also known as William D. Patterson, also known as William Dwight Patterson, also known as W. D. Patterson, and all unknown claimants of interest in the premises adverse to the Plaintiffs, Defendants-Appellees.

No. 5775.

Supreme Court of New Mexico.

Nov. 23, 1954.

Rehearing Denied Dec. 22, 1954.

Frazier, Cusack & Snead, Roswell, for appellants.

Atwood & Malone, Roswell, for appellees.

SADLER, Justice.

The question for decision is whether the last will and testament of plaintiffs' (appellants') ancestor, duly admitted to probate in Missouri and by stipulation to be treated in all respects as having been duly probated in New Mexico, contained language legally sufficient to transfer title to real estate. The court and counsel for all parties agreeing below, the real estate involved passes under the will, if its language be held sufficient to cover real estate, we acquiesce in that view and proceed to ascertain this primary question. The parties will be referred to as they were below, unless clarity demands otherwise.

The plaintiffs at time of his death were sole heirs at law of William Garner Lamphear, sometimes known as William Dwight Patterson, William D. Patterson, or W. D. Patterson. After his death and the filing of this suit, one of the plaintiffs named in the caption, Saidee Lamphear, the sister of William D. Patterson, died testate leaving May Townsend, H. Ward Lester and Adelaide Lester as sole devisees under her last will and testament which both below and here by stipulation is to be considered in all respects as if admitted to probate in the State of New Mexico. Accordingly, upon motion they were substituted as plaintiffs below in the place of Saidee Lamphear and are appellants here. Similarly, and because Lessing Alch and Mary Alch, his wife, had purchased a few years after Patterson's

death, the former having sold him the acreage in the first instance, the mineral acreage involved from Lorena J. Herl, formerly Lorena J. Stallard, they were made defendants herein and are appellees here. Their grantor, Lorena J. Herl, also joined as a defendant herein died pendente lite.

The document probated as the last will and testament of William D. Patterson, deceased, was holographic. It was drawn and executed on April 1, 1934, while the testator was a patient in the Missouri Pacific Hospital in St. Louis, Missouri. On his admission card, Mrs. Lorena J. Stallard, who by a subsequent marriage became Mr. Lorena J. Herl, was listed as a daughter. The testator remained in the hospital for only a short time when, following discharge, he resumed his occupation as freight adjustment agent for Missouri Pacific Railway, his employer.

Thereafter, and on August 4, 1943, the testator died, and his last will and testament was duly admitted to probate in Missouri, as already stated. It reads as follows:

*"Last Will and Testament*

"I, *William D. Patterson,* of the City of St. Louis, State of Missouri, being of sound mind, make this my last will and testament.

"After the payment of my just debts and funeral charges I devise and bequeath as follows:

"To *Lorena J. Stallard* all my personal property, consisting of jewelry and a Savings and checking account at Tower Grove Bank and Trust Company.

"I hereby nominate *Hannabal Stallard* to be executor of this my will and request that he shall be exempt from giving a surety or sureties on his official bond.

"In witness whereof I have hereunto set my hand this first day of April, 1934.

"Signed   William D. Patterson

"Signed and published as his last will by the said William D. Patterson in the presence of us, who in his presence and in the presence of each other have hereto subscribed our names as witnesses.

"Royal A. Weir, M. D.
signed

"J. A. Lembeck, M. D.
signed

"A. G. Woolridge, M. D.
signed."

Several years following death of William D. Patterson, Saidee Lamphear, a sister of decedent and Irene Prefontaine, a half-niece, constituting his sole heirs at law, instituted this suit to quiet title to the 5-acre mineral interest here involved, located in Lea County, New Mexico. Their complaint set up the intestacy of Patterson and consequent heirship in them. As already noted the sister, an invalid, died pendente lite, and her sole devisees mentioned, supra, were substituted as plaintiffs in her stead. The defendants, Lessing and Mary Alch, about six years after testator's death purchased from Lorena J. Herl the mineral interest

involved. In the answer filed they denied the intestacy of Patterson, pleaded ownership in Lorena J. Herl of the mineral interest under the last will quoted above and claimed through her. They sought by cross-complaint to quiet title to the acreage in themselves. In its findings and judgment the trial court upheld title in the Alches, based on the conclusion that the will mentioned, though purporting on its face to dispose of personal property only, was intended by testator as a full and complete disposition of all his property, both real and personal.

Thus it is, although without bearing on the relative rights of the parties, the original actors in the transactions giving rise to this controversy have passed from the scene and the heirs, successors or assigns, as the case may be, carry on in their respective rights. At the outset the naked question emerges whether a purported disposal of property reading:

"After the payment of my just debts and funeral charges I devise and bequeath as follows: To Lorena J. Stallard all my personal property consisting of jewelry and a savings and checking account at Tower Grove Bank and Trust Company."

may with propriety and correctness be given effect as if it read:

"After the payment of my just debts and funeral charges, I devise and bequeath as follows: To Lorena J. Stallard all my estate, real, personal and mixed, of whatever it may consist and wherever situated."

If under the factual situation here present and properly before the trial court the latter meaning may be deduced from the language quoted, the judgment rendered should be affirmed. Otherwise, it should be reversed with a direction to render judgment for the plaintiffs (appellants).

The factual situation developed at the trial, the competency of which was challenged by plaintiffs from the outset, must be stated. As already shown, the decedent was employed by Missouri Pacific Railway as a freight claim adjuster. He married the mother of Lorena J. Herl, nee Stallard, at some time prior to 1931, in which year decedent's wife died. He then went to live in the home of Lorena Herl, his step-daughter and lived there continuously until his death in August, 1943. At all times during his residence with the step-daughter, he was treated as a member of the family, and felt the same affection for the step-daughter as if she were his own daughter, though no blood relationship actually existed between them. He treated her as if she were, in fact, his own daughter and her children as his grandchildren. Throughout the period of his residence with the step-daughter, however, decedent contributed to support of the family by paying her for his room and board.

Shortly before his death on August 4, 1943, the decedent on July 22, 1943, changed the beneficiary in a life insurance policy from the one named therein as such to Lorena J. Herl, assigned her title to his automobile the following day and on July 30, 1943, less than a week before his death, signed a check by his mark, in favor of the step-daughter, for the entire balance standing to his credit in Tower Grove Bank and Trust Company.

Throughout the period of his residence with the step-daughter and her family, he kept in touch with an invalid sister living in California, Saidee Lamphear, one of the two coplaintiffs filing this suit. Letters exchanged between them showed a deep concern and affection on decedent's part for the sister, to whose support he was a regular contributor.

Briefly, the foregoing facts give a general outline of decedent's family ties and of those who were near and close to him, either by reason of blood relationship or close association. Having received testimony of facts above recited, the trial judge deduced that the will contained a latent ambiguity, viz., whether it amounted to a complete disposal of all his property, entitling him to receive extrinsic evidence showing the facts recited. He then concluded the testator intended by the language employed to give all his property, real as well as personal, to the step-daughter. Strangely, on first reading the disposing clause of the will, the trial judge entertained a different view. He said:

"The Court: The only devise contained in this instrument, as I see it, 'To Lorena J. Stallard all my personal property, consisting of jewelry and a savings and checking account at Tower Grove Bank and Trust Company.' There is no residuary clause. It appears to me that this Will did not have the effect of conveying the title to any real estate."

It is our view that the court's first impression of the questioned language was the correct one and must be taken as portraying the true intent of the testator. The trial judge saw no ambiguity in the language as it first registered its meaning on his mind and we see none now. The true rule was laid down by us in Brown v. Brown, 53 N.M. 379, 208 P.2d 1081, 1086, as follows:

"In construing a Will, the intention of the testator as expressed in the script must prevail if consistent with law. * * * If a provision in a will is in unambiguous language and reasonably susceptible to but one meaning which is consistent with all other provisions of the will, that meaning must prevail, and a different intention cannot be established by resort to rules of construction."

And in 4 Page on Wills, § 1617, pages 622–625, the text states:

"In determining the testator's intention, the true purpose of the inquiry is to ascertain not what he meant to express apart from the language used, but what the words he has used do express. Accordingly where there is no dispute as to what words were written in the will it is a fundamental principle that the extrinsic evidence cannot be received to show that the testator intended something outside of and independent of, such written words, to add words to those in the will, to contradict his language, or to take words away from those in the will, even though the court may believe that the actual disposition of the testator's property which results through changing circumstances, was not contemplated by him."

█ If there be any ambiguity patent or latent in the disposal provisions of this will, try as we may, we are unable to detect it. We think it opens wide the door to allowing the substitution of another's will for that of the testator, if language as plain and unambiguous as that with which we here are confronted can be converted into a meaning so contrary to what on its face it imports.

We are not unfamiliar with the doctrine that where ambiguity does exist, resort may be had to aids in construction in arriving at the true intent of the testator, such as the presumption against intestacy, absence of a residuary clause, and the like, West v. West, 215 App.Div. 285, 213 N.Y.S. 480; or cases cited by defendants such as In re Olsen's Estate, 9 Cal.App.2d 374, 50 P.2d 70, and Davisson v. Sparrow, Ohio App., 97 N.E.2d 694, as well as annotations in 137 A.L.R. 212 and 162 A.L.R. 1134 listing other cases where the words "personal property" have been construed to embrace real property, or as meaning "property personal to me," and equivalent phrases. But in all such cases we have found not one containing language so free from ambiguity as that here employed as a basis for any such construction.

We think any construction which carries us away from the plain, understandable and commonplace meaning of the words here employed leads us into a lush growth of tangled conjecture, which indulged, makes any declaration of intent on the part of the testator pure guesswork, as likely to defeat as to carry out his true intent.

It follows from what has been said that the judgment of the district court should be reversed and the cause remanded with a direction to the trial court to set the same aside and enter judgment in favor of the plaintiffs (appellants) who will recover their costs.

It is so ordered.

McGHEE, C. J., and COMPTON, LUJAN, and SEYMOUR, JJ., concur.