388 P.2d 68

Casandra GREGG et al., Plaintiffs-Appellants and Cross-Appellees,

v.

Marion Hogan GARDNER, also known as Paddy Hogan Gardner, Defendant-Appellee and Cross-Appellant,

Mrs. *John Hugen,* also known as Sydne Lee Hughen, and Mrs. Frankie Freitas, and First National Bank of Las Cruces, Defendants-Appellees.

No. 7284.

Supreme Court of New Mexico.

Dec. 23, 1963.

Shipley, Seller & Whorton, Lorna Shipley, Alamogordo, for appellants.

J. D. Weir, J. R. Crouch, Las Cruces, for Marion Hogan Gardner.

Edward E. Triviz, Las Cruces, for First National Bank of Las Cruces.

MOISE, Justice.

Out of a series of most unforeseen, untoward and lamentable events arises this difficult, albeit interesting, litigation.

On July 25, 1956, Irma G. Evans, the testatrix, executed her will. At that time testatrix was married to Bernard B. Evans, who was and had been an invalid for a number of years. She had two children, Bodwin Lee Evans, a daughter, and Ryan Gregg Evans, a son, who were 10 and 9 years old, respectively.

Bernard B. Evans, the husband, died on March 1, 1957. Thereafter, on October 19, 1959, testatrix executed a codicil dealing with certain real estate which she had acquired from her father, but otherwise she left the 1956 will unchanged. On December 3, 1960, John Gregg, brother of testatrix, named as executor and trustee in the will, died. Her father, who was living when the will was executed, also died. On December 22, 1960, testatrix and her two children died as the result of an accident, the two children predeceasing their mother by a short period.

The will and codicil were offered for probate and duly admitted. The First National Bank of Las Cruces, New Mexico, was appointed Administrator with the will annexed on February 21, 1961. The first amended complaint in this cause was filed September 20, 1961. It is an action brought by a sister of decedent, and by the widow of John Gregg, a deceased brother, on behalf of her four children, nieces and nephew of decedent, all claiming to be heirs at law, seeking a declaratory judgment construing the will and declaring the rights of

the parties as to the following matters specified in the prayer:

"(a) That the express trust set out in the Last Will and Codicil of said Irma Gregg Evans, Deceased, failed for lack of beneficiaries.

"(b) That the failure of said trust for the use and benefit of her children or their issue gave rise to a resulting trust, as to all personal property of her estate, for the benefit of her heirs at law.

"(c) That the real estate owned by decedent at her death is expressly charged with the burden of payment of her debts, taxes and the expenses of administration of her estate, and the same must be paid from that source, so far as possible, before payment of any of said items shall be made from the personalty of her estate; and that the *net* assets of her estate should be distributed as claimed and asserted by plaintiffs in the second paragraph of Section 4 of this Complaint.

"(d) That the sales of real estate made by said Irma Gregg Evans in her lifetime constituted equitable conversion of the affected real estate into personal property, and ademption.

"(e) That, if this Court shall adjudge that the real estate of the decedent Irma G. Evans is not charged with the burden of payment of her

debts, taxes, and the expenses of administration of her estate, then the real estate and personal property distributable to said Marion Hogan Gardner is and should be charged with an equitable lien for payment of its aliquot share of the mortgage debt above mentioned, for the benefit of the other distributees of the estate of said deceased person.

"(f) That the costs of this action and reasonable attorneys' fees for Plaintiffs' attorneys and for any Guardian Ad Litem for minor parties hereto shall be paid from the funds of the estate of said Irma Gregg Evans, Deceased, before other distribution shall be made therefrom; and for such further relief as may be equitable and proper."

Marion (Paddy) Hogan Gardner, niece of decedent, who claims to be the sole beneficiary under the will, together with the administrator CTA, the alternate trustees named in the will, and all other known heirs at law, were named defendants and, in addition, certain unknown persons and unknown heirs of deceased heirs at law were joined. The alternate trustees did not appear or defend the action.

The material portions of the will which the court was called on to construe are the following:

"1. I understand that as a married woman, I have no power of testamentary disposition over any community property owned by my husband and me; but that I do have the power of testamentary disposition over my separate property and estate. I am the owner of real estate about one-half mile north of State College in Dona Ana County, New Mexico, which is my separate property and which I wish to dispose of upon my death as hereinafter set forth.

"2. I name and appoint my brother, John J. Gregg of Alamogordo, New Mexico as executor of this Will, and direct that no bond shall be required of him.

"3. I direct that all my just debts, including the expenses of my last illness and funeral, be paid by my executor as promptly as possible.

"4. After the payment of my debts, taxes and expenses of administration, I give and devise all of my real estate to my aforesaid brother, John J. Gregg, or to his successors, IN TRUST NEVERTHELESS, to and for the uses and purposes following, that is to say, for the maintenance, support and education of my two minor children, Bodwin Lee Evans, my daughter, now ten years of age, and Ryan Gregg Evans, my son, now nine years of age, until the youngest of them shall attain the age of twenty-five years. In the administration of said trust I hereby

fully authorize and empower my said trustee and his successors: (Here follow sub-paragraphs (A) to (D), inclusive, containing a statement of powers and duties of the trustees with regard to handling of the trust property).

"(E) When the youngest of my said children shall attain the age of twenty-five years, my said trustee shall convey the aforesaid real estate or such part thereof as remains unsold, to my said children, share and share alike (and I hereby give and devise the same, accordingly), and to the lawful descendents of such of my children as may have previously died leaving lawful issue him or her surviving, such lawful descendent or descendents to take the share that his parent would have taken if living, per stirpes, and not per capita.

'(F) If either of my said children shall die before attaining the age of twenty-five years, without issue, then the surviving child shall take his or her share and upon attaining the age of twenty-five years the entire trust estate shall be conveyed to such surviving child (and I hereby give and devise the same, accordingly).

"(G) If both of my said children shall die before attaining the age of twenty-five years, without issue, then and in that event I give and devise all of the aforesaid real estate, or such part thereof as may remain in the hands of the trustee, to my niece, Marion (Paddy) Hogan of El Paso, Texas, and her heirs and assigns.

\* \* \* \* \* \*

"7. I give and bequeath all of my personal property, of whatsoever kind and wheresoever situated and of which I shall die possessed to my husband, Bernard B. Evans, if he shall survive me. If he shall not survive me, then I give and bequeath all of said personal property to my trustee or trustees for the use and benefit of my children and subject to the trust provisions hereinbefore enumerated."

The codicil of October 11, 1959, stated that in addition to the real estate owned as separate property and mentioned in paragraph one of her will, testatrix also owned as separate property an undivided interest in some real estate in Alamogordo, Otero County, New Mexico. She stated that it should not be included in the trust provided for in paragraph four of the will as long as her father should live, but if he should pre-decease testatrix then upon her death, if she had not disposed of the property, it should pass to her trustee "in accordance with Paragraph Four."

The following findings of fact made by the court, none of which are attacked, are also material to show the changes in the

property after execution of the will. Out of these changes arise some of the problems which we are here called upon to resolve.

"29. On the date of execution of her Last Will, Irma Gregg Evans owned a nominal amount of personal property and owned valuable real estate, near State College, in Dona Ana County, New Mexico, which was her separate property; and she was indebted to the extent of $10,000.00 or more.

"30. After the dates when she executed her Last Will and the Codicil thereto, Irma Gregg Evans borrowed approximately $17,000.00 from the Defendant First National Bank of Las Cruces, New Mexico; and to secure payment of the note which evidenced said debt, she mortgaged her real estate in Dona Ana County, New Mexico, to said Bank, and assigned to it two escrow contracts covering sales of portions of her said real estate, under which the aggregate purchase price was approximately $47,000.00; and said mortgage, assignments and contracts were in effect at the time of her death."

The trial court, in a written opinion filed in the case, expressed the feeling that while the decision did not result in "an equitable distribution of this estate," since it felt "that the equities all lie on the side of the plaintiffs herein," nevertheless was convinced that he had "no right to interpret the will according to what he feels the equities are in the case, but that he must interpret the will as a whole as to the language used in the will, thereby determining what the intention of the testatrix was," and concluded that "When the children, who were the beneficiaries of the trust, died before the testatrix * * * it was her intention then that her entire estate go to Marion (Paddy) Hogan Gardner as set out in sub-paragraph G of Paragraph Four." From a judgment to this effect the plaintiffs appealed.

Seven points are relied on for reversal, and all are argued separately except the last two which are argued together. As we view the matter, it will be necessary for us to discuss only four of the points argued by appellants.

Point 1, denominated the "crux of this appeal" is stated thus by plaintiffs:

"The last will of Irma G. Evans, deceased, in express words which have a clear, natural and legal meaning gives to Marion Hogan Gardner only a devise over, of such part of decedent's real estate *as remains in the hands of her trustees*; no gift over, of decedent's personal property, is made by said will; and either Irma G. Evans died intestate as to all her personal property, or the personal property of her estate is impressed with a resulting

trust for the benefit of her heirs at law."

Basically, what is required under this point is an interpretation of the will so as to arrive at the true intention of testatrix. To this end we review certain provisions already quoted from the will. After noting her understanding that she could not dispose of "community property," testatrix expressed a desire in paragraph 1 to dispose of her separate "real estate about one-half mile north of State College * * *." In paragraph 4 testatrix devised to her brother in trust for the "maintenance, support and education" of her two minor children, until the youngest should "attain the age of twenty-five years," all of her "real estate." In sub-paragraphs (A) to (D), inclusive, provision was made for the powers, duties and authority of the trustee. There was no power to sell the real estate except under specified circumstances, and then only with court approval. In sub-paragraph (E) it was provided that when the younger of the children reached 25 years of age the trustee was directed to convey "the aforesaid real estate or such part thereof as remains unsold" to the children, with additional provision for conveyance if one of them had died with heirs. In sub-paragraph (F) "the entire trust estate" was ordered conveyed to the surviving child if one of the children should have died without issue before reaching 25 years of age. Sub-paragraph (G) is the devise to Marion (Paddy) Hogan Gardner of "aforesaid real estate," if both children died without issue before reaching age 25. This is the clause under which it was determined that Mrs. Gardner was entitled to take all of the estate. The husband of testatrix having pre-deceased her, paragraph 7 bequeathed all of the "personal property" of testatrix to her trustee "for the use and benefit of my children and subject to the trust provisions * * *." The father of testatrix having pre-deceased her, the codicil added the interest in the Alamogordo property into the devise in trust contained in paragraph 4.

Did the testatrix express an unambiguous desire that all of the property owned by her at her death pass as provided in paragraph 4(G)? This is the first question we are called upon to answer. All parties assert and the court found the will to be clear and unambiguous.

As early as 1890, in the case of Perea v. Barela, 5 N.M. 458, 23 Pac. 766, we recognized that in construing wills the intent and meaning of a testator must be ascertained from the instrument itself. This rule of construction has been uniformly applied to unambiguous wills. Our last expression appears in Delaney v. First National Bank in Albuquerque, N.M., 386 P.2d 711, 1963, from which we quote:

"In determining the testator's intention, the true purpose of the inquiry is to ascertain not what he meant to ex-

press, apart from the language used, but what the words he has used do express; not to add words to those in the will to contradict its language, or to take words away from those in the will, even though the court may believe that the actual disposition of the testator's property which results through changing circumstances, was not contemplated by him. 4 Bowe-Parker Rev., Page on Wills, § 32.1, pp. 229–232; Lamphear v. Alch, 58 N.M. 796, 277 P.2d 299; Brown v. Brown, 53 N.M. 379, 208 P.2d 1081."

We are struck with the similarity between our problem here and that presented in Lamphear v. Alch, 58 N.M. 796, 277 P.2d 299. Whereas, there we were called upon to determine if a gift of "all my personal property, consisting of jewelry and a Savings and checking account at Tower Grove Bank and Trust Company" included an interest in real estate, we here are faced with the question of whether or not there is included within a devise of "all of the aforesaid real estate," personal property which is bequeathed to the trustee "for the use and benefit of my children and subject to the trust provisions hereinbefore enumerated." Just as in Lamphear v. Alch, supra, we were unable to detect an ambiguity in the language used, here too, the ambiguity does not meet our eye.

■ We cannot overlook the fact that in sub-paragraphs (E) and (G) the testatrix devised the "aforesaid real estate," whereas in (F) she referred to the "entire trust estate." That it is presumed she meant something different by the variance in terms should go without saying. In Delancy v. First National Bank in Albuquerque, supra, we pointed out that it was significant in determining testator's intent that he had used the term "the lawful heirs of his body" in the will, but referred to "lawful child or children" in the codicil. Similarly here, while recognizing that the personal property placed in the trust by the terms of paragraph 7 might easily be found to be within the descriptive term "entire trust estate" as used in 4(F), something else must have been intended by use of the language "aforesaid real estate" in 4(G).

■■ As we understand defendant's arguments, the provision of paragraph 4(G) when considered with paragraph 7 should be interpreted so as to avoid intestacy as to any part of the estate. We certainly are aware of the rule that where a will has been executed, there is a presumption that the testator intended to dispose of all his estate. 57 Am.Jur. 754, Wills, § 1158. Nevertheless, where the residuary clause by the plain language used demonstrates a purpose to limit its operations to the property therein described, the presumption will not be permitted to operate to defeat the intention of the testator as expressed. Re Estate of Bigony, 397 Pa. 102, 152 A.2d 901, 72 A.L.R.2d 1166. In the instant case, we can-

not convince ourselves that where testatrix in paragraph 7 bequeathed her "personal property" to her trustee "subject to the trust provisions hereinbefore enumerated," she thereby evidenced an intention that her devise "of all the aforesaid real estate, or such part thereof as may remain in the hands of the trustee" should include any property other than real estate. As a matter of fact, if any part of the realty had been sold by the trustee, and the proceeds realized therefrom held in the trust, it is to our minds extremely doubtful that any disposition of such proceeds would have resulted under 4(E) and (G). Aside from any personal property falling into the trust under paragraph 7, a partial intestacy would have resulted.

There is present no indication of an intention on the part of testatrix that the personal property should devolve as provided in paragraph 4(G). The language chosen, to our minds, indicates the contrary.

It follows from what has been said that appellants' Point I is well taken and that the court erred in its determination that the entire estate passed to Marion (Paddy) Hogan Gardner.

We now consider appellants' Point II, which is stated by them as follows:

"The will of Irma G. Evans, deceased, charges her real estate with payment of her debts, taxes and expenses of administration of her estate; and the devise of real estate under her will is expressly postponed until said charges have been paid."

It is appellants' position that when testatrix stated in paragraph 4 that "after payment of my debts, taxes and expenses of administration, I give and devise all of my real estate * * * in trust * * *" she thereby expressly charged her real estate with payment of her "debts, taxes and expenses of administration," and that the same must be paid out of the real estate devised in paragraph 4(G) to Marion (Paddy) Hogan Gardner before looking to any of the personal property.

Appellants concede that ordinarily personalty of an estate is utilized for payment of debts before resort is had to the realty, and that § 31-7-14, N.M.S.A. 1953, so provides. Wollard v. Sulier, 55 N.M. 326, 232 P.2d 991. They argue, however, that where it is stated that "after the payment of debts * * *" certain realty is devised, the general rule is to the effect that the realty is thereby charged with the debts. This statement is supported by the notewriter and the cases cited in 2 A.L.R.2d 1310, 1314. In this connection, we observe that at page 1317 a number of cases coming to a contrary conclusion are noted. Our task, as we see it, is to consider the language used, and as is always true when a will is being construed, attempt to arrive at the intention of the testatrix. This is in-

variably the first and paramount inquiry. Brown v. Brown, 53 N.M. 379, 208 P.2d 1081; Wollard v. Sulier, supra. See also, 2 A.L.R.2d 1310, 1311, 1312.

■ As was said in Burleigh Estate, 405 Pa. 373, 376, 175 A.2d 838, 839 (1961):

"The pertinent principles of law are well settled; their application is sometimes difficult.

"It is now hornbook law (1) that the testator's intent is the polestar and must prevail; and (2) that his intent must be gathered from a consideration of (a) all the language contained in the four corners of his will and (b) his scheme of distribution and (c) the circumstances surrounding him at the time he made his will and (d) the existing facts; and (3) that technical rules or canons of construction should be resorted to only if the language of the will is ambiguous or conflicting or the testator's intent is for any reason uncertain: Dinkey's Estate, 403 Pa. 179, 168 A.2d 337; Pruner's Estate, 400 Pa. 629, 162 A.2d 626; Wanamaker's Estate, 399 Pa. 274, 159 A.2d 201; Hope's Estate, 398 Pa. 470, 159 A.2d 197.'"

See also Bald Estate, 385 Pa. 176, 122 A.2d 294; Dauphin Deposit Trust Co. v. McGinnes, M.D.Penn., 208 F.Supp. 228.

We have noted that paragraph 4 contained a devise of separate real estate in trust, and that this was specifically stated to be "after payment of my debts, taxes and expenses of administration." At the time the will was executed testatrix's husband was living and in paragraph 7 all personal property was bequeathed to the husband. If the wife had predeceased the husband, we think application of the general or majority rule noted above would unquestionably have been in order. It would appear clear that testatrix intended that the personal property pass to her husband free from any liability for her debts. Compare Calder v. Curry, 17 R.I. 610, 24 A. 103.

■ Considering paragraphs 4 and 7 together, in the circumstances here present, with the husband and children having predeceased testatrix, and the personal property not having been disposed of in the will, as we have determined above under Point I, it must follow that personalty passing under the laws of descent and distribution should be looked to for payment of debts before resort is had to real estate specifically devised, notwithstanding the language that the devise was made after payment of debts. § 31-7-14, N.M.S.A. 1953; 6 Page on Wills (Bowes-Parker Rev.) § 53.4; Fidelity Union Trust Co. v. Laise, 142 N.J.Eq. 366, 60 A.2d 250; Goforth v. Goforth, 202 Ark. 1017, 154 S.W.2d 819. The husband of testatrix being dead, nothing more could have been intended by the language used except a recognition that debts, taxes and expenses of administration

had a prior claim on property before the beneficiaries could receive it. To determine otherwise would probably result in effectively nullifying the gift to appellee, Marion (Paddy) Hogan Gardner, whereas she was the only one of the relatives specifically mentioned in the will and whom testatrix sought to favor.

In our consideration of Point I we have determined that the language used by testatrix did not evidence an intention to favor appellee, Marion (Paddy) Hogan Gardner, to the exclusion of all the other relatives. Neither would it be reasonable to conclude that the intention was to nullify entirely any preference demonstrated through naming her as devisee of the real estate remaining if the testatrix's children died before title to the property vested in them. We are satisfied that this construction of the will is reasonable and coincides with the scheme of distribution intended by the testatrix as gleaned from her language in the will. As already noted, this is the goal sought by us. Wollard v. Sulier, supra.

█ We have not overlooked appellants' arguments to the effect that devise "after payment of debts, taxes, and expenses of administration" accomplished an equitable conversion of the real estate into personalty by implication. The authorities cited by appellants, including our decision in Citizen's National Bank of Albuquerque v. First National Bank, 29 N.M. 273, 222 P. 935, and in Wollard v.

Sulier, supra, recognize such a rule. However, to find such a conversion by implication, the cases require a clear expression by testator that the real estate is to be sold and converted into money. 5 Page on Wills (Bowes-Parker Rev.) § 46.4; Citizen's National Bank of Albuquerque v. First National Bank, supra.

█ Here, the testatrix not only did not give the trustee power of sale, she expressly limited the right in this regard. Accordingly, we have no difficulty whatsoever in concluding that there was no equitable conversion by implication or otherwise. Compare, Sylvanus v. Pruett, 36 N.M. 112, 9 P.2d 142.

Point 3 is stated by appellants as follows:

"The sales of real estate made by Irma G. Evans, deceased, prior to her death, constituted equitable conversion of the real estate so sold, into personal property."

Although appellants requested the trial court to determine that the sale by testatrix during her lifetime of certain of her separate real property under contract of sale resulted in an equitable conversion into personalty, and an ademption from the terms of the will, such request was refused. Of course, in the view the court took of the will, and in the light of its conclusion that appellee Marion (Paddy) Hogan Gardner inherited the entire estate, both real and personal, the nature

of the contracts as realty or personalty was not material. However, this is changed by our decision under Point 1, and it is now necessary that an answer be supplied to this issue.

▮ It is clear that if a testator, after executing a will, specifically devising certain property, subsequently voluntarily conveys all or a part of the property so willed, there is an implied revocation of the will insofar as the property conveyed is concerned, and the property is adeemed from the operation of the will. Brown v. Heller, 30 N.M. 1, 227 P. 594.

▮ It is equally clear from our decisions that in equity a contract for sale of real estate results in the purchaser acquiring an equitable interest in the land which he may devise by will, and in case of intestacy the same passes to his heirs and not to his administrator. Whereas, legal title remains in the vendor, it is held in trust as security. Mesich v. Board of County Com'rs of McKinley County, 46 N.M. 412, 129 P.2d 974; Keirsey v. Hirsch, 58 N.M. 18, 265 P.2d 346, 43 A.L.R.2d 929. In Treadwell v. Henderson, 58 N.M. 230, 269 P.2d 1108, it was explained that this results through application of the doctrine of equitable conversion. It must follow that when testatrix entered into contracts to sell certain of her real estate, the equitable interest in the land passed to the purchasers although legal title remained in her. Through the doctrine of equitable conversion, her interest is considered as personalty. 19 Am.Jur. 11, Equitable Conversion, § 11; Eddington v. Turner, 27 Del.Ch. 411, 38 A.2d 738, 155 A.L.R. 562; see note in 65 A.L.R. 632. This coincides with the treatment accorded the contracts in the estate. They were inventoried and appraised as personal property. The personal property not having been disposed of in the will, it descends under our statutes of descent and distribution.

Point V is stated by appellants as follows:

"The appellants, as some of many parties having a common interest in the personal property of the estate of Irma G. Evans, deceased, which the administrator CTA of her estate holds as fiduciary for them, are entitled to reimbursement either out of said fund, or by proportional contribution from those who accept the benefits of their efforts, for appellants' expenses and reasonable attorneys' fees incurred in taking proper proceedings to protect said fund, obtain proper administration of said estate and secure instructions to effect distribution in accordance with law."

The court denied attorney fees to appellants' attorneys. This result was not surprising in light of the court's conclusion that appellants recover nothing. How-

ever, in view of our determination that the court erred in its construction of the will, we must decide if the law of New Mexico permits allowance of attorney fees under the circumstances here present. It is our considered judgment that it does not, and that the court ruled correctly.

 The general rule in New Mexico has been stated many times to the effect that "in the absence of a statute or rule of court attorney fees are not taxed as costs or considered as an item of damages." State ex rel. Stanley v. Lujan, 43 N.M. 348, 93 P.2d 1002; Keller v. Cavanaugh, 64 N.M. 86, 324 P.2d 783; State ex rel. Roberson v. Board of Education of City of Santa Fe, 70 N.M. 261, 372 P.2d 832. Allowance of attorney fees has been approved by us in rare instances. An exception to the general rule several times recognized by this court is present in the situation where attorney fees in a reasonable amount have been necessarily expended to obtain dissolution of an injunction. Webb v. Beal, 20 N.M. 218, 148 P. 487; Woods v. Fambrough, 24 N.M. 488, 174 P. 996; Herbst v. Rogers, 26 N.M. 287, 191 P. 441; Carr v. Mazon Estate, Inc., 26 N.M. 308, 191 P. 137; Tatavich v. Pettine, 31 N.M. 479, 247 P. 840. Another exception was recognized in a case where attorneys successfully prevented unlawful disposition of property of a "semi-public" corporation. Carabajal v. Candelaria, 65 N.M. 159, 333 P.2d 1058. A third exception was

approved in Marron v. Wood, 55 N.M. 367, 235 P.2d 1051, where it was held that the court did not abuse its discretion in ordering an attorney fee to be paid by the corporation on behalf of the parties on each side of a declaratory judgment proceeding seeking a determination of the rights of stockholders and directors of the corporation. The appellants do not claim to come within any of these exceptions, but rather within the rules announced in Las Vegas Railway & Power Co. v. Trust Co. of St. Louis County, 17 N.M. 286, 126 P. 1009, and in Merrick v. Deering, 30 N.M. 431, 236 P. 735.

Attorney fees were denied in Las Vegas Railway & Power Co. v. Trust Co. of St. Louis County, supra. The case involved an action by one of many persons having common interests in a trust who sued to save it from distribution and to restore it to the purposes of the trust, and while recognizing the rule and discussing differing applications of it under varying circumstances, denied its application in the particular litigation. We see nothing in what was said in that case which can be considered as precedent for an allowance of fees to appellants' attorneys out of the estate in this case.

Neither does the case come within the terms of Merrick v. Deering, supra, where an attorney fee was allowed on behalf of lawyers who had brought large sums into a trust through litigation involving con-

struction of a will. In the instant case, nothing of value was in any way added to the assets of the estate or trust.

In addition to the foregoing, the rule of law generally applied denies the right to an allowance of an attorney fee out of an estate to an attorney whose services were rendered on behalf of an interested individual or group of individuals without employment by the personal representative of the estate. Re Estate of Gratton, 136 Or. 224, 298 P. 231, 79 A.L.R. 517; case note beginning 79 A.L.R. 522; 142 A.L.R. 1459; In Re Lappy's Estate, 202 Or. 571, 277 P.2d 781. There are exceptions to the general rule discussed in the annotations cited above, one of which we adopted in Merrick v. Deering, supra, but the instant case does not come within them.

We have determined that the court erred in its interpretation of the will, and that Marion (Paddy) Hogan Gardner should receive under paragraph 4(G) only the separate real estate of testatrix of which she died seized and which she had not sold under contract of sale. We have also decided that such real estate was not charged with the debts and other charges against the estate, except as the personal property might be insufficient to satisfy the same. In addition, we have ruled on the question of whether the court could or should make an allowance of attorney fees to appellants' attorneys. All of the issues passed on by the court below, or deemed necessary for a final determination of the case upon remand have thus been resolved. We accordingly pass without consideration the remaining questions raised by appellants.

We note appellee Marion (Paddy) Hogan Gardner's Point I on cross-appeal, which reads:

"The trial court erred in failing and refusing to conclude and decree that all of the decedent's estate, real and personal, was devised and bequeathed to appellee and cross-appellant Gardner and subject to direct distribution to her upon closing of Probate No. 40."

We are of the opinion that the trial court was correct in its conclusion that all the property, both real and personal, should be distributed to the trustees. The property given in trust vested in the trustees, to be held by them for those entitled thereto as herein determined upon a resulting trust. Restatement of Trusts, 2nd Ed., §§ 112, 411; Wollard v. Sulier, supra; Wagner v. Clauson, 399 Ill. 403, 78 N.E.2d 203, 3 A.L.R.2d 672.

Cross-appellant's second point reads:

"The trial court erred in staying the judgment herein and proceedings in Probate No. 40 without supersedeas by appellants and cross-appellees on this appeal."

Supreme Court Rule 9 (§ 21–2–1(9), N.M. S.A. 1953) and § 21–10–6, N.M.S.A. 1953, are relied on as mandatory when an appeal is taken. We do not so construe either the rule or statute. We see in them nothing more than a provision that if the status quo is to be maintained a supersedeas bond must be provided in such an amount as will "indemnify the appellee, from all damages that may result from such supersedeas," the amount to be fixed by the court. Absent an order of the court and a bond, the judgment remains in effect and may be enforced. Higgins v. Fuller, 48 N.M. 215, 148 P.2d 573.

The judgment of the lower court is reversed, and the cause remanded with instructions to proceed in a manner consistent herewith.

It is so ordered.

CARMODY and NOBLE, JJ., concur.