*Decisions will be entered for the respondent.*

ESTATE OF IDA MAUDE SOWELL, HOMER T. SOWELL, EXECUTOR, PETITIONER v. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 14216-78.    Filed August 7, 1980.

*Kendall O. Schlenker* and *Patricia Tucker,* for the petitioner.
*Glenn D. Wilkinson,* for the respondent.

### OPINION

STERRETT, *Judge:* By letter dated October 5, 1978, respondent determined a deficiency of $101,104.78 in estate taxes resulting from an adjustment of $319,054.54 increase in the gross estate due to including the corpus of a trust created by Thomas R. Sowell.

---

A petition for redetermination of the deficiency was filed timely. Thereafter, both parties filed a motion for summary judgment pursuant to Rule 121, Tax Court Rules of Practice and Procedure. Additionally, the Court granted respondent's motion for leave to file a memorandum brief in support of his motion for summary judgment. Each party filed a brief and reply brief in support of their respective motions.

On March 27, 1964, Mrs. Sowell and her husband executed a joint will. Mr. Sowell died November 20, 1967, and Mrs. Sowell died November 4, 1976. The will was admitted to probate in San Miguel County, N. Mex., following each of their deaths.

Item three of Mr. Sowell's will devised and bequested the residue of his estate to his wife, as trustee. Mrs. Sowell, as trustee, was to pay all the income of the trust to herself, and, upon her death, the corpus of the trust was to pass to Mr. and Mrs. Sowell's two sons and one daughter-in-law. Item eight of Mr. Sowell's will provided as follows:

ITEM VIII: To the Trustee, we give complete and full power to handle, sell, manage, lend, lease, exchange, repair, improve, invest, reinvest and in all other respects completely to take charge of the trust estate and every part thereof, without having to report to or obtain authority of any court and to make no accounting to anyone except those persons directly affected by the acts of said trustee. We give our trustee the right to invade the corpus of said trust in cases of emergency or illness.

The only question presented is whether decedent's power to invade the corpus of the trust is a general power of appointment within the meaning of section 2041, I.R.C. 1954.

Section 2041(b) defines a general power of appointment as a power exercisable in favor of decedent, his estate, his creditors, or the creditors of his estate. Without more, petitioner's right to invade the corpus would be within this definition, and the value of the trust would be includable in her estate for the purposes of the Federal estate tax.

However, section 2041(b)(1)(A) provides that a power to consume, invade, or appropriate property for the benefit of the decedent, which is limited by "an ascertainable standard relating to health, education, support, or maintenance of the decedent shall not be deemed a general power of appointment." If the power is so limited, then the fair market value of property to which it is applicable would not be included in decedent's gross estate.

Section 20.2041–1(c)(2), Estate Tax Regs., provides in pertinent part:

A power is limited by such a standard if the extent of the holder's duty to exercise and not to exercise the power is reasonably measurable in terms of his needs for health, education, or support (or any combination of them). As used in this subparagraph, the words "support" and "maintenance" are synonymous and their meaning is not limited to the bare necessities of life. A power to use property for the comfort, welfare, or happiness of the holder of the power is not limited by the requisite standard. * * *

Thus, section 2041(b)(1)(A) and the regulations thereunder require (1) that the standard set forth in the instrument be ascertainable and (2) that the standard relate to health, education, support, or maintenance.

The power to invade the corpus "in cases of * * * illness" falls squarely within the statutory limitations. Therefore, the question is whether that part of the phrase "in cases of emergency" conferred a power to invade which extended beyond the statutory limitations.

Respondent contends that the words "emergency" or "illness" do not meet the statutory requirements of section 2041(b)(1)(A). Specifically, respondent argues that the word emergency is not an ascertainable standard and that, because the phrase is in the disjunctive, it is not limited to one of four statutorily specified matters (i.e., health, education, support, or maintenance).

In *Estate of Jones v. Commissioner*, 56 T.C. 35, 41 (1971), affd. 474 F.2d 1338 (3d Cir. 1973), this Court specifically left open the question of whether the words "in cases of emergency" satisfied the standards of section 2041(b)(1)(A). However, even in that case, we recognized that the words were "words of limitation" in contrast to an absolute power. Further, in the context of other sections of the estate tax provisions, this Court, as well as others, has held that the word emergency constituted a standard capable of being interpreted and enforced by a court of equity. See *St. Louis Union Trust Co., Exec. v. United States*, 374 F.2d 427, 442 (8th Cir. 1967), and *Estate of Lee v. Commissioner*, 28 T.C. 1259, 1262 (1957). In interpreting the power to invade "in cases of sickness or other emergency," we stated the following:

It is obvious that the power in question gave the trustee no absolute and arbitrary control over the corpus. On the contrary, it was conditional and limited. A definite standard—the sickness or other emergency of the respective beneficiaries—was provided to govern its exercise. * * * [*Estate of Budlong v.*

Commissioner, 7 T.C. 756, 761 (1946), revd. on another issue sub nom. Industrial Trust Co. v. Commissioner, 165 F.2d 142 (1st Cir. 1947).]

Accordingly, we reject respondent's contention that the phraseology used in the trust agreement is not subject to an ascertainable standard.

Next, we must determine the nature of the grant of power given decedent and whether it is clearly limited in its exercise to matters relating to the decedent's health, education, support, and maintenance. The extent of decedent's legal rights and interest possessed is determined in light of local law. *Strite v. McGinnes*, 330 F.2d 234, 238 (3d Cir. 1964), cert. denied 379 U.S. 836 (1964).

Under New Mexico law, the intent and meaning of a testator must be ascertained from the instrument itself. New Mexico has "uniformly applied [this rule of construction] to unambiguous wills." *Gregg v. Gardner*, 73 N.M. 347, 388 P.2d 68, 74 (1963). Therefore, "In determining the testator's intention, the true purpose of the inquiry is to ascertain not what he meant to express, apart from the language used, but what the words he has used do express; not to add words to those in the will to contradict its language or to take words away from those in the will, even though the Court may believe that the actual disposition of the testator's property which results through changing circumstances, was not contemplated by him. 4 Bowe-Parker Rev., Page on Wills, sec. 32.1 pp. 229–232; *Lamphear v. Alch*, 58 N.M. 796, 277 P.2d 299; *Brown v. Brown*, 53 N.M. 379, 208 P.2d 1081." *Gregg v. Gardner*, 338 P.2d 68, 74 (1963).

Petitioner contends that a New Mexico court would have limited decedent's power of invasion to matters relating to her support or maintenance. The Supreme Court of New Mexico has not had occasion to interpret the word "emergency" in the context of a power to invade a trust. However, we do not believe that the court would restrict or limit its meaning as petitioner contends. Petitioner's position would require that the court add words to an otherwise unambiguous sentence. See *Commissioner v. Estate of Bosch*, 387 U.S. 456 (1967).

The difficulty, in accepting petitioner's argument, is that not all emergencies in life are associated with "health, education, support, or maintenance." While, no doubt, the bulk of emergencies can fairly be attributed to such categories, there are other associations. Thus, there can be financial emergencies unrelated

to maintenance; collateral for a loan becomes insufficient due to a drop in the silver market; an emergency, yes, but one affecting net worth, not maintenance.

An emergency is a circumstance that calls for immediate action. It may be caused by an act of God, but whatever the cause, the word "emergency" relates to the timing of the invasion, not to any particular source of need. Therefore, it brings into play a set of parameters different from those in play when considering the words "health, education, support, or maintenance." Given the specificity with which Congress attempted to circumscribe a special power, we do not believe that we are entitled to expand that circumscription.

Given that the term emergency is a word of limitation, the disjunctive phraseology of the grant requires that it be viewed in isolation with the consequent conclusion that it can have a free-standing meaning independent of the four statutory words at issue. Hence, we must conclude that her power of invasion was not sufficiently limited so as to fall within the exception of section 2041(b)(1)(A).

Accordingly, petitioner's motion for summary judgment is denied. Respondent's motion for summary judgment is granted and

*Decision will be entered under Rule 155.*