[No. 2925.　May 2, 1925.]

## MERRICK v. DEERING et al.

### SYLLABUS BY THE COURT

1. Under section 4197, Code of 1915, it is the duty of the court, in cases tried without a jury, upon request, to make such specific findings of ultimate facts as will enable the appellate court, in reviewing such findings and the conclusions, to traverse the same ground as the trial court.

2. Under section 4197, Code of 1915, it is error to refuse to make findings as to ultimate facts essential to conclusion.

3. Under Section 4197, Code of 1915, it is error to refuse to make findings as to ability, standing, skill and experience of attorneys entitled to the allowance of fees, and as to the time and labor expended.

4. Judgment erroneous for refusal to make findings as to the ability, standing, skill and experience of attorneys entitled to the allowance of fees, and as to the time and labor expended, reviewed upon the whole record and allowances made, a remand for findings being impracticable, the trial judge is no longer in office.

Appeal from District Court, Colfax County; Leib, Judge.

Suit by George P. Merrick, executor of William H. Bartlett, deceased, against Mary Wentworth Deering and others. From the supplemental decree making allowances to C. J. Roberts and others, as attorneys, the attorneys appeal. Remanded, with directions.

F. C. Wilson and J. O. Seth, both of Santa Fe, for appellants.

George H. Gould, of Santa Barbara, Cal., Pitkin & Moore, of Denver, Colo., E. R. Wright, of Santa Fe, and Crampton & Darden, of Raton, for appellees.

### OPINION OF THE COURT

WATSON, J. In a suit by George P. Merrick, executor, for a construction of the last will and testament of William H. Bartlett, deceased, the court, by supplemental decree, made certain allowances to C. J. Roberts, as attorney for interested parties and as guardian ad litem, and to C. J. Roberts and M. F. Prosser, as attorneys, from which the said attorneys appeal.

William H. Bartlett died testate, December 10, 1918. His will was filed for probate December 26, 1918, on which day George P. Merrick, the executor named in the will, was appointed and qualified as special administrator. On March 3, 1919, the will was admitted to probate in Colfax county, and said Merrick was appointed and qualified as executor and gave bond in the sum of $3,000,000. The estate consisted of real property in New Mexico, California, and Illinois, and a large amount of personal property consisting principally of stocks and bonds.

By the second paragraph of the will, the testator created a $1,000,000 trust with George P. Merrick, said executor, Frank S. Cowgill, and Jesse H. Ridge, as trustees. Two granddaughters, Mary Wentworth Bartlett and Virginia Bartlett, minors, and daughters of William H. Bartlett, Jr., son of the testator, were each

to receive, annually, from the income of said trust the sum of $2,500, and the balance of such income was to be paid to Norman W. Bartlett and William H. Bartlett, Jr.. sons of the testator, so long as they should live. On the death of either of said sons the share of each income therefore paid to such deceased son was to be paid to his issue or, failing issue, to his legal heirs for 20 years, when such issue or heirs were to receive that part of the corpus of the trust from which such income had been derived.

By the third paragraph of the will, a trust of $250,-000 was created, with the same trustees, for the purpose of providing annuities of $1,500 each to Mary Wentworth Deering, testator's daughter, and Sarah M. Stevens, Helen Bartlett, and Noel S. Munn, and $600 to Annie H. Brown. There were cash legacies of $27,-000. The Vermijo ranch in Colfax county, N. M., with all personal property thereon, and all of the capital stock of the Adams Cattle Company was given to testator's son, Norman W. Bartlett. All of the residue of the testator's property was to go, one-third to said Norman W. Bartlett and two-thirds to said William H. Bartlett, Jr., sons of the testator.

Norman W. Bartlett died testate September 5, 1919, leaving all of his property to his brother, William H. Bartlett, Jr. William H. Bartlett, Jr., died testate January 15, 1920, leaving all of his property to his widow, Virginia M. Bartlett. Said George P. Merrick was executor of each of these wills. Upon the death of Norman W. Bartlett, his interest in the $1,000,000 trust passed, under the terms of the will, one-half to Mary Wentworth Deering, sister, and one-half to William H. Bartlett, Jr., brother. Upon the death of the latter, his interest in the trust passed to Virginia Bartlett and Mary Wentworth Bartlett, the said minors.

On December 10, 1921, the executor filed his complaint in the district court of Colfax county alleging that by reason of the large necessary expenditures by the executor, including $225,000 of federal inheritance

tax and $325,000 paid to Mary Wentworth Deering in settlement of a contest of the will instituted by her, and by reason of the unproductive character and depreciation in value of many of the properties, and of general business conditions, the executor was not able fully to satisfy the specific devises and legacies of the will and to set up the said trusts, wherefore, it became necessary to have judicial construction of the will as to whether such trusts should have priority. It was further alleged that the executor had advanced large sums of money to Norman W. Bartlett and William H. Bartlett, Jr., during their lives, and to Virginia M. Bartlett for the support of herself and said minor children, with all of whom said executor had imdemnity agreements, and that certain real estate in California of the value of about $100,000, not specifically devised, and originally believed to form a part of the residue of said estate, had been, by decree of the probate court in California, treated as a part thereof, and that the title thereto had passed by succession to said Virginia M. Bartlett. It was further alleged that said executor had made demand upon said Virginia M. Bartlett that she restore to the executor so much of said sums so advanced and of such property as would enable said executor to set up the said trusts, and that said Virginia M. Bartlett had refused to do so.

The executor prayed for a construction of the will as to the priority of the trusts to the specific devises and bequests, for direction as to whether he was entitled to use and should take any portion of the proceeds of the sale of the Vermejo ranch and the corporate stock of the Adams Cattle Company; that the court adjudicate as to his right of reimbursement for the advances made, as to the duty of said Virginia M. Bartlett to make restitution of, or of the value of said New Mexico and California real estate; and that the ownership of said New Mexico property be determined and the title quieted because of the fact that said New Mexico property was acquired by Norman W. Bartlett subsequent to the making of his will, and by William H.

Bartlett, Jr., subsequent to the making of his will, and because of the uncertainty as to whether after-acquired real estate passes by will under the laws of New Mexico. Virginia M. Bartlett, Mary Wentworth Deering, the said minors, the Pacific Southwest Trust & Savings Bank of Los Angeles, as guardian of the estates of said minors, Sarah M. Stevens, Helen Bartlett, Noel S. Munn, and other interested parties were named as defendants.

Virginia M. Bartlett filed an answer denying that the two minors had any interest in the real estate in New Mexico; denying that she should be required to account to the executor for the amount advanced in settling the will contest; denying that the California real estate should be subjected to the establishment of the trusts; and claiming that all advancements made to her inured to the benefit of the minors, her children, and should be apportioned. She asked that the plaintiff be required to file inventory and report as special administrator, and also as executor, and for other relief.

The two minors, by their California corporate guardian, and by appellant Roberts as attorney, filed answer claiming that the executor should be charged with moneys advanced to Norman W. Bartlett, William H. Bartlett, Jr., and Virginia M. Bartlett, and moneys expended in settlement of the will contest and otherwise; claiming that the appellants should be required to file inventories and accounts, and to make report of his acts and doings as executor; claiming that the moneys paid to Norman W. Bartlett, to William H. Bartlett, Jr., and to Virginia M. Bartlett, and for the settlement of the will contest, should be charged as a lien against the real estate in Colfax county and against the interest of Virginia M. Bartlett in the estate; and that the trusts take precedence over all other provisions of the will. This answer also set up that the minors were each the owner of an undivided three-eighths interest in the Vermejo ranch in Colfax county.

On the same day, Sarah M. Stevens, by appellant Roberts, her attorney, filed her answer setting up sub-

stantially the same matters as were alleged in the answer of the minors, excepting the allegation relative to the minors' interests in the Vermejo ranch. On the same day, and by the same attorney, Helen Bartlett and Noel S. Munn filed answers adopting the allegations of the answer of Sarah M. Stevens.

April 5, 1922, the court appointed appellant Roberts as guardian ad litem for the two minors, and on that day he filed an answer adopting the allegations of the answer theretofore filed by the California guardian.

May 17, 1922, the trustees, by their attorney, filed an answer neither admitting nor denying the allagations of the complaint but demanding strict proof thereof, and asking the court to protect, safeguard and defend the rights of the defendants in the premises.

May 27, 1922, Mary Wentworth Deering, by her attorney, appellant Roberts, filed her answer in which she claimed priority of the trusts over all other provisions of the will, and demanding a full accounting by the plaintiff as special administrator and as executor and as manager of the affairs of Adams Cattle Company.

March 26, 1923, the trustees filed a motion for revivor and substitution, asking that E. C. Crampton be substituted as trustee in place of Frank S. Cowgill, deceased. Upon the granting of this order, an amended answer was filed by the trustees, differing from the original only as necessary to show the substitution. To all of these answers the executor replied, denying, in his reply to the answer of the guardian, his liability as executor for moneys advanced.

The cause was set for trial at Raton in April, 1923. Assembled for the trial, the parties, after several days' conference, reached an agreement which was embodied in a stipulation, which, being presented to the court, with formal proofs, resulted in a decree covering all matters in dispute. By this decree, it was adjudged that the plaintiff, as executor, was in duty bound to bring

the action, and that all named defendants were necessary parties thereto. The trustees were authorized and directed to accept from the executor certain named securities in the amount of $551,175. The title of the Vermejo ranch and the capital stock of the Adams Cattle Company was quieted in Virginia M. Bartlett, and she, because of the payments and advancements made as hereinbefore stated, and of the award to her of the California property, was required to give her note to the trustees in the sum of $598,825, secured by mortgage on the Vermejo ranch and by the pledge of 666 shares, being one-third, of the capital stock of the Adams Cattle Company.

One hundred and fifty thousand dollars was deemed sufficient for the establishment of the trust created by paragraph 3 of the will, and it was therefore reduced to that figure; the two trusts being thus filled by the securities and the note. As consideration for the release by the minors of their claims to three-eights interest in the Vermejo ranch, a trust of $125,000 was decreed to be established in their favor. The trust was to be filled from the proceeds of any sale that might be made of the Vermejo ranch and the stock and assets of the Adams Cattle Company remaining after the satisfaction of the liens thereon. The income from said trust was to be paid to Virginia M. Bartlett during her lifetime, and at her death the corpus to go to the minors. It was, however, provided that in case the resources of Virginia M. Bartlett should become so diminished as not to afford her an adequate support, payments for such purpose might be made to her from the corpus of the trust. All remaining assets of the estate were directed to be reduced to cash and to be applied as follows: First, to the payment of further expenses of administration, including counsel fees; second, the payment of a note of Virginia M. Bartlett to Mary Wentworth Deering in the sum of $26,500; third, the payment of interest upon the Virginia M. Bartlett note of $598,825; fourth, in the reduction of the principal of said note; and fifth, any balance to be turned over to Virginia M. Bartlett.

The said decree reserved for determination, and to be covered in a supplemental decree, the question of the fees to be allowed to the several attorneys participating in the litigation and to the guardian ad litem. Pursuant to that reservation and to special hearing had and evidence introduced, a supplemental decree was filed, December 3, 1923, in and by which the court awarded to the appellants, Prosser and Roberts, for services as attorneys for Mary Wentworth Deering, the sum of $4,000, to appellant Roberts as guardian ad litem, $4,500, and to appellant Roberts $900 for services as attorney for Sarah M. Stevens, Helen Bartlett, and Noel S. Nunn, $300 for each. From that part of the supplemental decree making these allowances, the appeal is taken.

Appellants filed a request that:

"In passing upon the question of attorney's fees and allowances to be made in this matter, that the court make specific findings of fact, and upon such findings state conclusions of law, and in making such findings the court, by appropriate findings, find as to:

"(1) The ability, standing, skill and experience of the various attorneys employed, and as to the legal skill and ability of the guardian ad litem.

"(2) The necessity and demand for the services of the various attorneys.

"(3) The nature and character of the controversy, the questions involved therein, and the importance of the litigation.

"(4) The responsibility assumed.

"(5) The time and labor expended by each of said attorneys and guardian ad litem, and the benefits derived therefrom.

"(6) The amount involved in the litigation.

"(7) The result attained by reason of the services of the various parties to be compensated by order of the court.

"(8) And any other circumstances attending the cause which, according to established usage, will serve as a guide in determining what is a proper charge.

"(9) That the court in finding as above requested, make separate findings as to each attorney employed in the case and as to the guardian ad litem."

This request the court denied, and upon this denial

error is assigned. The matters, concerning which the court refused to find specifically are the elements which, as stated in Williams v. Dockweiler, 19 N. M. 623, 145 P. 475, quoting Thornton on Attorneys at Law, 449, it is customary to consider in arriving at the reasonable value of an attorney's services. In the supplemental decree, the court recites the submission of evidence with reference to the character, extent, nature, and value of the services, a consideration by the court of such evidence, as well as the files, pleadings, exhibits, the arguments of counsel, and the law applicable and pertinent to the questions involved therein, familiarity with the course, character, and extent of the litigation, and with the questions involved therein, and with the services rendered by the various attorneys and the guardian ad litem. Upon these recitals, the court proceeds to fix a reasonable value of the services rendered by the several attorneys in the cause, and by the guardian ad litem.

[**1-3**] By section 4197, Code of 1915, it is provided:

"Upon the trial of any question of fact by the court, its decision must be given in writing and filed with the clerk in the cause, and in such decision the court shall find the facts and give its conclusions of law pertinent to the case, which must be stated separately, but the finding of facts and the giving of conclusions of law may be waived by the several parties to the issue, by suffering default or by ailing to appear at the trial, or by consent in writing, or by oral consent in open court, entered in the record."

This statute was construed in Luna v. Coal R. Co., 16 N. M. 71, 113 P. 831, where the judgment was reversed because of the insufficiency of the findings. The findings in that case were criticised as being no more informative to the court than a general verdict, because in reviewing the judgment a search of the whole record would be required, after which it would be impossible to determine whether the facts found to be controlling were so considered by the trial court. The court remarked:

"In effect, the findings made are conclusions of law from facts which must have been found by the trial court in order to reach the conclusions announced, but which are not disclosed."

—and concluded that it must "either retry the case on all the evidence in the record, or remand it for specific findings of fact."

The statute was again considered in Morrow v. Martinez, 27 N. M. 354, 200 P. 1071, the former case being approved, and the doctrine established that the trial court is required to "make findings of the essential or determining facts on which its conclusion in the case was reached specific enough to enable this court to review its decisions on the same grounds as those on which it was made."

Counsel for appellees cite Fraser v. Bank, 18 N. M. 340, 137 P. 592, to the point that it is only the ultimate, as distinguished from the evidentiary, facts as to which findings are required. It is argued that there is no limit to the extent to which findings may be carried if, upon the request of any party, the court must find specifically as to every evidentiary fact about which inquiry has been made. It is contended, also, that in this case the ultimate fact to be found was the amount of a reasonable compensation for the services rendered.

As we understand the New Mexico doctrine, as expounded in the cases cited, the purpose of the statute is that this court, in the review of cases, tried without a jury, may be able to traverse the same ground as the lower court, reaching not a conclusion of its own, but a determination as to whether that of the trial court is justified in fact and in law. To that end the trial court must state in writing the facts upon which it bases its conclusions. We may then determine on appeal whether there is substantial evidence to support the findings of fact and whether the facts so found support the conclusion. As said in Morrow v. Martinez, supra:

"It is a right which the successful party has to have the court make such a record as will support the judgment, and it is a right the unsuccessful party has to have the court make such a record as will enable him to review the action if he so elects."

For such purpose, it is apparent that it is the ultimate facts, rather than the evidentiary facts, which should be so found. It is equally apparent that a finding upon the very issue in the cause is not, in a case like this, a finding of ultimate fact, but a conclusion. Such a finding can only be reviewed by search of the whole record. In the present case, if the court arrived at its conclusion on the question of reasonable compensation without reference to the ability, standing, skill and experience of the appellants, and without reference to the time and labor expended, it failed to take into account important elements of a just award. Whether these essential considerations, these ultimate facts, were disregarded does not appear from the record. Both parties were entitled to have it appear—appellees, because the findings on these questions, if supported by substantial evidence, would be conclusive in support of the judgment; appellants, because if such findings were not supported by substantial evidence, or if, based upon such findings, the conclusion as to reasonable compensation amounted to an abuse of discretion, they would be entitled to a correction of the error.

Appellees urge that, as the appeal is from a supplemental decree, the original decree should be looked to for any findings omitted in the supplemental decree. It is admitted, however, that neither decree contains findings as to the standing, ability, skill and experience of the appellants, or as to the time and labor expended. It is urged further that it would have been impracticable, useless, and embarrassing for the court to have attempted a classification of all the attorneys employed in the case according to their standing, ability, skill and experience. We do not understand, however, that any such classfication was requested. Certainly no such classification was necessary. The questions were independent as to each attorney claiming compensation, and each attorney was entitled as to himself, to a determination of the ultimate facts and a fair and full consideration of them.

It is contended that there was not sufficient evi-

dence to enable the court to make findings as to the omitted facts. Without determining that question, we think that it was the court's duty to consider the evidence before it, including such matters as came within its judical knowledge. If the evdence was not deemed sufficient for findings, it should have been so stated. A mere refusal to make findings leaves us uninformed as to whether the evidence was considered insufficient, or whether the facts shown, or claimed to be shown, by such evidence were deemed to have no bearing on the result. It is urged that the appellants presented a request for a large number of specific findings, the majority of which related not to ultimate but to evidentiary facts, and that by so doing they precluded themselves from objecting that the court refused to examine the whole mass in order to select those requests properly presented. Whether this contention would have merit, if the requests in question had been buried or conceal within this mass of requests, we do not consider. The fact is, as appears by the record, that the eight requests under consideration were not a part of the mass, but were contained within a separate document, independently filed, and presumably so brought to the attention of the court.

[4] Having fully considered everything urged in support of the judgment as against the attack for failure to make findings, we cannot escape the conclusion that the case at bar falls within the doctrine of Luna v. Coal R. Co., supra, and Morrow v. Martinez, supra, and that the court erred in the respect charged. The judgment being tainted with error, must be reversed. Following the precedents set in the cases cited, the cause would be remanded for proper findings. It is within our judicial knowledge, however, that the trial judge, who heard the case, is no longer in office. His successor is no better situated than we to make the findings essential to a proper judgment. To remand for findings under such circumstances would seem impracticable. We therefore conclude that it is for us, upon a review of the whole record, including such

findings as are before us, to make such award to the appellants for their services as the evidence shall seem to warrant.

[5] Judge Roberts' services extended over a period of 14 or 15 months, he having been retained by the guardian of the minors in January, 1922, by the annuitants interested in the smaller trust somewhat later, and by Mrs. Deering in April, 1922. He at once commenced the work necessary to familiarize himself with the various questions of law and fact involved in the litigation, and at the time of the settlement had written a brief on each of the legal questions involved. which briefs are before us as exhibits. He ascertained at once that no inventory had been filed by the executor. There was on file a general appraisement showing the estate to consist of property of the value of $2,600,000. No accounting of any kind had been made by the executor. In September, 1922, he was furnished by the executor with a copy of an audit, which is before us as an exhibit, the examination of which involved the review and analysis of numerous and large receipts and disbursements and business transactions. To assist him in an understanding of this audit and a grasp of the condition of the estate, he found it necessary to employ his own auditor to whom he gave detailed written instructions as to the information which he desired, and with whom he was in constant communication. The character and amount of work done by appellant Roberts best appears from an examination of the accounts and of the legal briefs before us as evidence. From them it appears that Judge Roberts, as was his duty, left nothing undone to prepare himself at the anticipated trial vigorously to represent the interest of his several clients. The preparations evidence a high degree of skill and ability. As to his standing and broad experience, we may well take judicial notice, as he was for more than 10 years a member of this court. While he kept no daily record of his work upon this case, he testified quite in detail as to the time given by himself and by other lawyers

in his employ, in consultation, in investigation of the facts, in making briefs, and in assimilating the contents of those briefs, and in general preparation for the trial. He concluded that his own time and that of his assistants could not have been less than a total of 200 days.

In testifying as to the service performed, Judge Roberts attempted to classify the same with respect to the particular interests served, and particularly to distinguish as to the services rendered for the minors, which, although legal services, were rendered in his capacity as guardian ad litem. As above shown, the court made five separate awards, namely, as attorney for Helen Bartlett, for Noel S. Munn, for Sarah M. Stevens, and as guardian ad litem, and, jointly with appellant Prosser, as attorneys for Mrs. Deering. It was finally decreed, however, that all compensation should be paid from the residuary estate, for which purpose, with others, a separate fund was left in the hands of the executor. The main question, therefore, is the total amount properly payable. We believe that the practicable distinction is that between the services performed for all of his clients having to do with the construction of the will and the establishment and filling of the testamentary trusts, and those services having relation to the claim of the minors to interests in the Vermejo ranch, resulting in the creation of the $125,000 trust.

Judge Roberts himself placed a value of $25,000 upon all the services rendered by him, exclusive of those relating to the interest of the minors in the real estate. Three attorneys of standing testified as experts. Mr. Howard L. Bickley, now a member of this court, testified that, on the assumption that $600,000 had been brought into the trust as a result of the litigation, wholly or principally through efforts of Judge Roberts, 5 per cent of such sum would constitute a fair and reasonable compensation for such services. Mr. L. S. Wilson testified that such would be a fair and reasonable compensation, provided the sum stated was

brought into the trust wholly through the efforts of
Judge Roberts. Mr. John Morrow, now representative
in Congress from this state, testified that $25.000
would be just compensation for Judge Roberts' ser-
vices as guardian ad litem, which would include ad-
vocacy of the claim of the minors to a three-fourths in-
terest in the land, together with the fair proportion of
the other services chargeable to the minors.

Judge Roberts considered the amounts so brought
into the trust to be approximately $600,000, and it was
upon this assumption that the experts testified. The
actual amount for which Mrs. Bartlett gave her note
to the trustees, with security, was $598,825. Counsel
for appellees raise no question as to this amount having
been recovered by the trustees as a result of the stipu-
lated decree. It is urged, however, that while Judge
Roberts' efforts conduced to the result, they were not
solely responsible for it. This is doubtless true. It is
even perhaps true, as contended by counsel that there
is nothing in the record to show that the same result
would not have been reached had Judge Roberts not
appeared in the cause. It is to be remembered that
the decree was stipulated; the interested parties, after
several days' conference, agreeing on the settlement
represented in the decree. What was said or done at
the conference, or what positions were taken do not
appear of record. It does appear, however, that Judge
Roberts represented all parties beneficially interested
in the establishment and filling of the trusts except
one $600 annuitant.

All of them were made defendants by the executor
and were found by the court to be necessary and proper
parties. It is urged that a duty rested upon the trus-
tees to take the necessary steps to secure the establish-
ment and filling of the trusts. Apparently no such
steps had been taken 21 months after probate of the
will. In their answer, they took no position on the
issues involved, assuming an indifferent attitude
What part they played in the final adjustment does
not appear. The executor himself was one of the trus-

tees, and the executor's attorney of record had become a trustee and had been substituted as a party before the compromise was reached. While the executor, by his complaint, took the position that Mrs. Bartlett should, as he had heretofore demanded of her, restore to him, on account of the sums advanced to herself and to Norman W. Bartlett and to William H. Bartlett, Jr., and the amount paid to settle the contest, enough to enable him to satisfy the trusts, and while he suggested that from an examination of the will it might well be supposed and construed as the testator's intent that the trusts should be preferred to the specific devises and bequests, yet the executor's personal interest in the construction of the will was simply to obtain an authoritative guide for his conduct and to insure his personal nonliability. On the question as to the liability of the executor for the large advances made, including the sum paid in settlement of the contest, the executor's interest and position were adversary. As to the general inquiry regarding the conduct of the executor in his handling of the affairs of the estate and the examination and auditing of his accounts, there was no doubt a community of interest with Mrs. Bartlett, and there were some conferences with her counsel. How much co-operation there may have been does not appear. Judge Roberts apparently was prepared, adequately and independently, to represent the interests of his clients on each issue involved, as appears by his testimony and by the exhibits referred to. There was no counsel engaged in the case except appellant Prosser, whose interests and contentions were parallel.

The analysis might be carried farther, but probably not with profit. From what has been said, it is apparent that this is a peculiar case. Precedents are not controlling. A mathematical solution is impossible. Just what effect each element, to be considered, should have on the result cannot be stated. The court can only exercise its sound discretion aided by its experience, the consideration of all facts and circumstances shown by the record, the expert testimony, and the contentions of the several parties. Having done so, we

conclude that appellant Roberts should have compensation for all services in this cause, except those with respect to the minors' interest in the real estate, in the sum of $15,000.

Appellant Prosser is a member of the law firm of Frear, Prosser, Anderson & Marx, of Honolulu. He is a member of the bar of the Supreme Court of the United States, of the state of New York, and of Hawaii. He was retained by Mrs. Deering in September, 1922. He at once obtained copies of the pleadings, and the office force of his firm, under his direction, carefully briefed the issues involved. He arrived at Santa Fe on March 20, 1923, where he conferred with Judge Roberts, as well as with counsel for Mrs. Bartlett. With these counsel, as well as with Mr. Paul, the auditor, he went over the executor's accounts. He was determined that it was important to find out the exact value of securities available to become a part of the trust funds. He went from Santa Fe to Chicago and there carefully investigated and obtained the fullest information to be had as to such values. He returned to Santa Fe and attended the conference at Raton, resulting in the settlement, intending when the case came to trial to appear as counsel of record for Mrs. Deering. It thus appears that he was under retainer some eight months, was away from his office more than one month, exclusive of the time required in travel from Honolulu to Santa Fe. His client was interested to the extent of a $1,500 annuity under the small trust, one-fourth of the income from the large trust after deduction of $5.000, and one-fourth of the corpus of this trust. His responsibility was shared with Judge Roberts. His brief is not before us. He made no separate claim for expenses, which must have been considerable. He testified that, considering all circumstances, $3,500 would be a fair allowance for the services of himself and his firm. A fuller showing as to his ability, standing, skill and experience, and of the work actually done in prepartion for trial would have been of assistance to us. We consider, however, that the record fully supports Mr. Prosser's estimate. Considering the char-

acter of the litigation, the large amounts involved, the large interests of his client, the long absence from the office, and the necessarily large expenses, we believe that any lesser amount would be inadequate.

Judge Roberts estimated at $7,500 the value of his services in connection with the claim of the minors to interests in the Vermejo ranch. Appellee Virginia M. Bartlett urges that this was not an essential issue in the case, being unnecessary to a construction of the will, or to the establishment or filling of the trust. As to this, it is sufficient to say that the issue was introduced by the executor's complaint, was accepted by this appellee in her answer, was actually considered and disposed of in the stipulated decree, and was found by the trial court to have been essential. By appellees, the executor and the trustees, it is urged that the allowance for this service is not to be made upon the assumption of the creation of a trust of the undoubted value of $125,000. It is pointed out that such trust "has not in fact been established, and whether it shall ever be established depends upon the contingency whether the real estate in Colfax county and 666 shares of stock of the Adams Cattle Company would yield a sufficient net amount to establish the trust, after payment of a mortgage of $598,825, plus taxes, accruing interest, and intervening expenses of maintenance,"

This perhaps correctly states the situation, except in one respect. By the decree the trust is to be created out of the net proceeds of the sale of the Vrmejo ranch and all of the stock and assets of the Adams Cattle Company. Six hundred sixty-six shares mentioned by counsel constitute but one-third of such stock. The stock of this company was appraised at $450,000 and the Vermejo ranch at $512,500, aggregating $962,500. This is subject to the $598,825 secured to the trustees against it. On the other hand, by the provisions of the settlement and decree, it is probable that there will be a substantial surplus in the hands of the trustees in the fund created for the expenses of administration, which will be applied by them in reduction of the secured note. From this trust the minors derive no income.

The corpus comes to them only at their mother's death and subject to be reduced by advancements, which may be made to her if her own resources should become insufficient for her necessary maintenance. The brief prepared upon the claimed rights of the minors in the real estate is elaborate and exhaustive. The time element is large. On the other hand, the question is simple, requiring the labor of research rather than the grasp of complicated and technical questions of law and fact as in the other branches of the litigation. The result might be stated as a compromise of a claimed present interest of the value of some $384,000 for a contingent and postponed interest of $125,000. The trial court found that this compromise was in the interest of the minors, and we do not question that. It is considered in its bearing upon the result achieved. In view of all this, we conclude that $3,000 should be allowed Judge Roberts for his services in this connection.

A number of other errors were assigned and presented in argument which require no consideration. However, lest this case be considered by the profession a precedent for a trial de novo, on the question of allowances to attorneys, we shall allude to one of them. Appellants contend that the inadequacy of the allowances made by the trial court constitutes an abuse of its discretion. It is urged by appellees that an allowance of compensation by a trial court is to such an extent discretionary that the decree will not be disturbed except for very persuasive reasons. We desire to make it plain that we do not question that principle. We hold that the principle is not applicable here. The record does not enable us to determine whether, or in what manner, the trial court exercised its discretion. Hence, we cannot review it. We review the record as we have because no other method is open to us.

For the error pointed out, those parts of the supplemental decree appealed from whereby appellant Roberts is allowed the sum of $4,500 for his services as guardian ad litem, as fees and expenses earned and in-

curred in representing the minor defendants, Mary Wentworth Bartlett and Virginia Bartlett, and the sum of $300 as attorney's fees as attorney for Sarah M. Stevens, and the sum of $300 as attorney's fees as attorney for Helen Bartlett, and the sum of $300 as attorney's fees as attorney for Noel S. Munn, and that part of said supplemental decree whereby appellants Roberts and Prosser are allowed for attorneys' fees and expenses as attorneys for Mary Wentworth Deering the total sum of $4,000 will be reversed. Upon our findings and conclusions herein, in lieu of such ports of said supplemental decree so reversed, allowance is made to appellant Roberts for all services performed in this cause in the sum of $18,000, and allowance is hereby made to appellant M. F. Prosser for all services. and expenses rendered and incurred in this cause in the sum of $3,500. The cause will be remanded, and the district court directed to modify the supplemental decree in accordance herewith, and it is so ordered.

PARKER, C. J., and HOLLOMAN, District Judge, concur.