OPINION OF THE COURT
 

 Jones, J.
 

 We hold that it was not error to affirm a Surrogate’s Court jury’s rejection of a will for lack of due execution based on testimony by a handwriting expert that the signature of the testatrix was not genuine in contradiction of the testimony of three disinterested, credible, attesting witnesses.
 

 In the contest which followed the offer for probate of the alleged will of Palma Sylvestri the single issue submitted to the jury was whether the proponent, a daughter of the decedent and executrix and residuary legatee under the instrument, had established by a preponderance of the credible evidence that the instrument had been signed by her mother. On April 24, 1972, the date of execution appearing on the instrument, Palma Sylvestri was 87 years old, illiterate but able to understand and speak Italian and English, and able to be about. The will left bequests of $1,000 to five of decedent’s seven children and to one grandchild and of $250 to each of seven other grandchildren; the residue was bequeathed to proponent, a daughter who lived next door to her mother and with whom the mother spent her daytime hours.
 

 Witnesses produced by proponent included three attesting witnesses to the instrument, each of whom had been a member of the New York Bar for a number of years, who testified that on the date indicated the decedent had signed and acknowledged the instrument as her will in their presence and that they, at her request, had signed the same in the presence of each other. Each gave an account of the occasion on which the signing took place, describing the place, the persons present both then and in the minutes prior thereto, the physical arrangement of the decedent and witnesses at the
 
 *264
 
 table where the signing occurred, and the reading of the will to Mrs. Sylvestri and her response to questions concerning its contents. As to the details of the event, although the witnesses were in general agreement, there were some differences in the particulars to which they testified. One of the witnesses was the draftsman of the instrument and the other two had witnessed a prior will of the decedent executed in 1966 and a codicil executed in 1967. While the latter two attesting witnesses had known each other for several years, one of them had had no prior acquaintance with the third witness (the draftsman) and the other had not been introduced to him prior to the night on which they gathered for the will signing. The two witnesses had been asked to serve, not by the attorney-witness who had prepared the will, but by the son-in-law of the decedent, the husband of the proponent who was himself a member of the Bar.
 

 To refute the attesting witnesses’ testimony of due execution, the objectants called to the stand and qualified a handwriting expert who testified to having compared the signature on the offered instrument with signatures which were undisputedly those of the testatrix on exemplars received in evidence. On this predicate the witness expressed his opinion that the signature on the will had not been written by the same person who had written the signatures on the other papers. He testified in minute detail as to the comparison of distinguishing characteristics of the signatures on which he based his opinion.
 

 In rebuttal proponent also called a handwriting expert, who expressed a contrary opinion — that the same person who had signed certain exemplars had also signed the will. The effect of his testimony was somewhat weakened by the fact that, in the case of two other papers with which he had compared the signature on the will and on which he relied in part for his conclusion as to the genuineness of the testamentary signature, the testimony of other witnesses cast doubt on whether the compared signatures were indeed those of the testatrix.
 

 Following submission to it of the issue of due execution the jury responded with a finding on a vote of five to one that the decedent had not signed the offered instrument. The proponent’s motion to set aside the verdict as against the weight of the evidence was denied by the Surrogate, as had been her prior motion for a directed verdict. The Appellate Division upheld those dispositions in affirming the decree which denied
 
 *265
 
 probate on the ground that the paper propounded had not been duly executed by the decedent. We now affirm the order of the Appellate Division.
 

 Appellant-proponent’s principal argument in this court is that, on the evidence produced at the trial in support of the objection of lack of due execution, a directed verdict upholding the instrument should have been granted, because the negative testimony of the handwriting expert called by contestants was not sufficient to create a jury question in face of the positive testimony given by those who, if their testimony were credited, were attesting witnesses to the execution of Palma Sylvestri’s will. Proponent would have us reject as inadequate to create an issue of credibility the opinion of objectant’s handwriting expert, by adopting what is said to be a holding in some other jurisdictions — "that the opinion evidence of experts,
 
 standing alone,
 
 is insufficient to sustain a finding of forgery in the face of
 
 direct and credible
 
 evidence of
 
 disinterested
 
 subscribing witnesses who testified that they saw the testator sign his name”.
 
 [1]
 

 Accepting for present purposes the view that the cases cited by objectants do in fact espouse the rule stated, we decline the invitation to adopt such a precept — not heretofore applied by any of our appellate courts — in this jurisdiction. While at one time the comparison of handwritings with an eye to determining genuineness of signatures was of questionable reliability and acceptance
 
 (Hoag v Wright,
 
 174 NY 36, 42), as long ago as 1940, when the third edition of Wigmore on Evidence was published, a change in attitude had been identified:
 

 "Though the Opinion rule, then, would
 
 admit expert testimony,
 
 yet there is further urged an objection resting mainly on the instinctive aversion of the earlier judges to a novel method of testimony — an objection which, the more explicitly it is framed, the weaker its legitimate influence appears; namely, the objection that the opinion of a handwriting-expert is in general
 
 inferior
 
 to that of an ordinary person who has seen the party write or has corresponded with him.
 

 "There was a time when the scientific aspects of such
 
 *266
 
 testimony did not commend themselves even to great judges, who were at first found to distrust it in all its novel forms * * *
 

 "It ought to be now well understood that the identification and the decipherment of documents, including handwriting and all other features, are the subject of scientific study, made by the aid of instruments of precision, and that modern research has elevated the whole subject into the realm of an applied science. Under such conditions, tangible reasons can be given for every opinion, precisely as an engineer can explain the reasons for constructing a bridge of a certain type. A qualified expert’s opinion may therefore now be tested and judged by the reasons on which it is based.” (7 Wigmore, Evidence [3d ed], § 1998, pp 188-190.)
 

 In our view, the adverse opinion of a handwriting expert— which the jury must evaluate and analyze on the basis of the underlying explanations and predicates furnished by the expert — is to be weighed by the jury along with other credible evidence and need not necessarily be regarded as inadequate to rebut the testimony of subscribing witnesses as to the genuineness of a testator’s signature. The better rule is that set out in Wigmore: "[T]he testimony of the attesting witnesses is of course
 
 not conclusive in favor of
 
 execution even when all agree and when no personal impeachment is attempted. * * * [Specifically, the unanimous testimony of the attesters may fail of credit even though the only opposing evidence is that of the alleged
 
 maker’s handwriting
 
 as analyzed by
 
 expert witnesses.
 
 The circumstantial evidence afforded by the handwriting may in a given case be more convincing than the testimony of the attesters. This possibility is one of the results of the modern scientific study of handwriting.” (4 Wigmore, Evidence [Chadbourn rev], § 1302, p 725.) We therefore reject any categorical position with respect to such proof; it cannot now be said to be so inherently suspect, weak or unreliable as,
 
 ipso facto,
 
 to call for classification as evidence having an impaired or restricted probative worth. Such testimony like other oral and documentary proof must be weighed in the light of the opposing proof in the particular case. We perceive no basis in the present case for discounting the testimony of objectants’ handwriting expert as a matter of law.
 

 Additionally, we observe that, even if the proposition urged by proponent (by which expert opinion evidence, stand
 
 *267
 
 ing alone, would °not be sufficient to overcome testimony of attesting witnesses) were to be adopted, the present case would not fall within its ambit. The record contains other evidence which may be regarded as supportive of the conclusion reached by objectants’ handwriting expert and which, together with his opinion, serve as a sufficient basis for the jury’s rejection of the testimony of the attesting witnesses. Most significant were the exemplars of decedent’s handwriting themselves, the genuineness of which was unchallenged, some of which were signed within weeks or months of the purported will execution. There can be no argument with the statement by the Surrogate that "[e]ven to the untrained eye, marked difference are apparent between the questioned signature upon the propounded instrument and the exemplar signatures upon various exhibits received in evidence.” Conflicts in the testimony of the attesting witnesses themselves as to the details of the will signing
 
 [2]
 
 and inconsistencies between the testimony and pretrial deposition of the witness-draftsman as to the subject matters of his meetings with the decedent were further factors which could have been considered by the jury and could have influenced them to accept £he opinion of objectants’ expert that the testamentary signature was not genuine. The jury’s resolution of the issue of due execution, with support in the record, is beyond the power of this court to disturb.
 

 Proponent’s claims of error by the Surrogate in the limitation placed on the receipt in evidence of papers executed by the decedent after the date of the propounded instrument and in his refusal to permit the reopening of proponent’s case for the introduction of further evidence provide no basis for reversal of the order of the court below. Insofar as it was urged that the papers signed by decedent to be filed in connection with the estate of her deceased husband seeking the appointment of proponent as administratrix
 
 c. t. a.
 
 of that
 
 *268
 
 estate should have been admitted in their entirety — not simply for the signature — it suffices to note that at most such proof could have given rise to a permissible inference that, some weeks after the execution of her will, the decedent was willing to request proponent’s appointment as administratrix of her husband’s estate. The evidence tendered did not constitute declarations by the decedent with respect to benefits she had conferred on proponent by her will or as to her affection for the proponent in general or her inclination to favor proponent by any testamentary disposition. (Cf. Will — Testator’s Declarations, Ann., 62 ALR2d 855.) In this circumstance we cannot say that it was error to have admitted this documentary evidence for limited purpose only. Finally the Surrogate’s denial of the application to reopen proponent’s case is an instance of the exercise of a judicial discretion in the management of the litigation which is beyond the power of the Court of Appeals to review (Cohen and Karger, Powers of the New York Court of Appeals, § 151).
 

 Accordingly, the order of the Appellate Division should be affirmed, with costs payable out of the estate to all parties filing briefs.
 

 Chief Judge Breitel and Judges Jasen, Gabrielli, Wachtler, Fuchsberg and Cooke concur.
 

 Order affirmed, etc.
 

 [1]
 

 . In support of this statement objectants cite
 
 Matter of Elias
 
 (429 Pa 314);
 
 Matter of Porter
 
 (341 Pa 476);
 
 Matter of Henry
 
 (276 Pa 511);
 
 Matter of Krugle
 
 (134 So 2d 860 [Fla]);
 
 Matter of Grant
 
 (123 So 2d 560 [Fla]);
 
 Matter of Miller
 
 (201 Wis 148);
 
 Matter of Johnson
 
 (170 Wis 436);
 
 Matter of Lombardo
 
 (205 La 261);
 
 Malko v Ferrante
 
 (345 Mass 777).
 

 [2]
 

 . For example, while one witness testified that the entire will had been read aloud in Italian to Mrs. Sylvestri, another said that it had not been read completely in that language. One said that she had asked questions of the draftsman concerning various provisions of the will after its reading, but the draftsman denied that she had asked him any such questions. One witness testified on direct examination that he saw the decedent sign the instrument but at an examination before trial he had stated that a will containing the purported signature of the decedent had been handed to him and he had been requested to sign it. (At the trial the witness testified by way of explanation that he had thought the question at the pretrial examination referred to the typed name at the top of the instrument.)