699 P.2d 638

In the Matter of the ESTATE OF Ellis Loyd FOSTER, Deceased.

Gladys PRICE, Petitioner-Appellant,

v.

Carl C. FOSTER, Lois Rook, Kenneth N. Foster, Roy Moore, La Verta Scott, James N. Foster, Jr., and Edna Murdock, Respondents-Appellees.

No. 7930.

Court of Appeals of New Mexico.

April 11, 1985.

Certiorari Denied May 8, 1985.

Watkins & Watkins, Carlsbad, Michael P. Watkins, Gallagher & Casados, P.C., Albuquerque, for petitioner-appellant.

K. Douglas Perrin, Jennings & Christy, Roswell, for respondents-appellees Carl C. Foster, Roy Moore, Lois Rook, La Verta Scott, Kenneth N. Foster and James N. Foster, Jr.

Jeffrey L. Bowman, Hinkle, Cox, Eaton, Coffield & Hensley, Roswell, for respondent-appellee Edna Murdock.

## OPINION

WOOD, Judge.

Ellis Loyd Foster (decedent) died July 13, 1983. The trial court denied probate of his alleged will and ruled that he died intestate. The trial court awarded attorney fees to respondents, who opposed probate

of the alleged will. Price, the sister of decedent, had offered the alleged will for probate. Price appeals, contending (1) the alleged will should have been admitted to probate; (2) the trial court lacked subject matter jurisdiction to consider the question of attorney fees; and (3) the trial court lacked authority to award attorney fees. Statutory references are to NMSA 1978.

Upon her petition filed July 18, 1983, Price was appointed special administrator until a personal representative was appointed. Respondents are nephews and nieces of decedent. Foster, one of the respondents, petitioned for appointment as special administrator on September 15, 1983. Respondents, by joint motion filed September 29, 1983, sought the removal of Price as special administrator. Price and Moore (another respondent) were appointed special co-administrators on November 1, 1983. In January 1984, respondents alleged that Price was not complying with the requirement of joint action contained in the order of November 1, 1983. The trial court, on January 30, 1984, divided the duties of Price and Moore. Price was to be responsible for managing the oil and gas properties and liquid assets of the estate; Moore was to be responsible for managing the ranch.

The activities of Price and Moore as special co-administrators are not issues in this appeal. The fact of co-administration, pending appointment of a personal representative, illustrates the division of the heirs into two factions—Price and respondents. The co-administration is pertinent to the issue of subject matter jurisdiction.

## PROPRIETY OF REFUSING PROBATE OF THE ALLEGED WILL

On October 13, 1983, Price, as an individual, petitioned for formal probate of an alleged will said to have been discovered subsequent to the petition filed on July 18, 1983, which sought an adjudication of intestacy. The alleged will left decedent's entire estate to Price if Price survived decedent.

Respondents opposed admission of the alleged will to probate on the ground that "the alleged will was not executed by" decedent. See § 45–3–404. After trial on the issue of "due execution," the trial court found that the name of the decedent appearing on the alleged will "is a non-genuine simulated signature, is not the signature of the decedent ... and is not in the handwriting of" decedent.

Price's attack on the propriety of the trial court's ruling is directed to the evidence. However, Price's discussion of the evidence is on the basis that respondents had the burden of persuasion. This is incorrect; respondents did not have the burden of persuasion. Because they did not, a detailed review of the evidence is not necessary.

Section 45–3–407 provides:

In contested cases, petitioners who seek to establish intestacy have the burden of establishing prima facie proof of death, venue and heirship. Proponents of a will have the burden of establishing prima facie proof of due execution in all cases, and if they are also petitioners, prima facie proof of death and venue. Contestants of a will have the burden of establishing lack of testamentary intent or capacity, undue influence, fraud, duress, mistake or revocation. Parties have the ultimate burden of persuasion as to matters with respect to which they have the initial burden of proof. If a will is opposed by the petition for probate of a later will revoking the former, it shall be determined first whether the later will is entitled to probate. If a will is opposed by a petition for a declaration of intestacy, it shall be determined first whether the will is entitled to probate.

Price recognizes that she had the initial burden of "establishing prima facie proof of due execution ...." She asserts that she met this initial burden. We assume, but do not decide, that she did. She states: "The burden then shifted to the Respondents who were contesting the will." Which burden? Price does not say.

We have assumed that Price met her initial burden of prima facie proof of due

execution. We now assume, but do not decide, that at this point respondents had the burden of presenting evidence in opposition to Price's prima facie proof and if respondents did not meet this burden, the evidence would have required a finding of due execution. Respondents did present evidence which conflicted with the evidence presented by Price on the issue of due execution.

Price seems to contend that the burden on respondents was more than the burden of coming forward with evidence, that respondents had the burden of persuasion. Under this approach, respondents had the burden of persuading the trial court that decedent had not signed the alleged will. This is incorrect, being contrary to the statute. Section 45-3-407 states: "Parties have the ultimate burden of persuasion as to matters with respect to which they have the initial burden of proof." *In Re Estate of Kelly*, 99 N.M. 482, 489, 660 P.2d 124 (Ct.App.1983), states: "The burden is upon the proponent of a document purported to be a will, to prove [persuade] that the instrument was executed by the decedent ...." The burden of persuasion did not shift to respondents; rather, it remained with Price. *Cf. Witzke v. Dettweiler*, 83 N.M. 802, 498 P.2d 689 (Ct.App. 1972); *Mayfield v. Keeth Gas Co.*, 81 N.M. 313, 466 P.2d 879 (Ct.App.1970).

Price claims the issue is forgery and that respondents had the burden of persuading the trial court that decedent's signature was forged. She likens "forgery" to "fraud" and points out that under Section 45-3-407 a contestant claiming fraud has the burden of persuasion. We need not determine whether a claim of forgery is to be equated with fraud so as to effect the burden of persuasion.

Price fails to recognize that the issue is "due execution," not "forgery." We are not concerned with identifying a person who falsely made decedent's signature in violation of the criminal law. *See* § 30-16-10 (Repl.Pamp.1984). We are not concerned with "the crime of falsely and with fraudulent intent making ... a writing ...

that if genuine might apparently be of legal effect on the rights of another." Webster's Third New International Dictionary (1966). Specifically, we are not concerned with who placed decedent's apparent signature on the alleged will. Respondents did not claim "forgery," they claimed that the alleged will was not executed by decedent. Price is the one who asserted the issue was "forgery." Price's claim of forgery is a conclusion, and her conclusion is correct; someone forged decedent's name. However, we are not concerned with that someone. Price's conclusion is dependent on an underlying fact. The underlying fact is whether decedent duly executed the will. There is no forgery issue in this case separable from the factual issue of "due execution." By claiming forgery, Price may not avoid her statutory burden of persuading the trial court of "due execution" of the alleged will.

■ We now answer Price's arguments directed to the evidence.

(a) The trial court did not believe the testimony of Price's expert witness, finding it "non-persuasive." It found the testimony of respondents' expert to be persuasive. Price asserts this is the only evidence on which the trial court ruled and refers us to the trial court's oral remarks at the conclusion of the trial. Price overlooks the finding that the testimony of respondents' expert questioned documents examiner "plus other testimony" was persuasive. The trial court's oral remarks were not a decision of the court and error cannot be predicated upon the oral remarks. *Fox v. Doak*, 78 N.M. 743, 438 P.2d 153 (1968).

(b) Ignoring the rule that the trial court's oral remarks do not amount to a decision upon which error can be predicated, Price asserts that the finding that decedent did not execute the alleged will is based entirely upon the testimony of respondents' expert witness. Price then argues, as a matter of law, that the testimony of a handwriting expert is insufficient to overcome the testimony of witnesses. Such a rule does exist in some jurisdictions, *see Dozier v. Smith*, 446 So.2d 1107 (Fla.

App. 2d Dist.1984), and seems to be based on a distrust in the evidentiary value of the opinions of handwriting experts. *See Jones v. Jones*, 406 Ill. 448, 94 N.E.2d 314 (1950). This view is contrary to New Mexico law.

■ NMSA 1978, Evid.Rules 702, 703 and 704 (Repl.Pamp.1983) provide for the admission of expert testimony. These rules do not characterize the opinions of experts as a lesser type of evidence, as does *Jones*. Once an expert has been qualified to give his opinion on a particular issue, the weight to be given the expert's opinion is for the trier of the facts. *Wood v. Citizens Standard Life Insurance Co.*, 82 N.M. 271, 480 P.2d 161 (1971). *See also Crownover v. National Farmers Union Property & Casualty Co.*, 100 N.M. 568, 673 P.2d 1301 (1983); *Gonzales v. General Motors Corp.*, 89 N.M. 474, 553 P.2d 1281 (Ct.App.1976). The weight to be given the testimony of an expert on handwriting is for the trier of fact. The expert's testimony that a signature is not genuine, in contradiction of the testimony of attesting witnesses, is sufficient to sustain a finding of lack of due execution. *In Re Estate of Sylvestri*, 44 N.Y.2d 260, 405 N.Y.S.2d 424, 376 N.E.2d 897 (1978); *In Re Estate of Bogan*, 541 P.2d 854 (Okl.1975).

(c) Price contends respondents did not prove the "forgery" by clear and convincing evidence and, therefore, the evidence was insufficient to support the finding that decedent did not execute the alleged will. This contention mixes up several concepts. We have pointed out that respondents did not have the burden of persuasion, that burden was on Price. We have pointed out that the issue is "due execution" and not "forgery." Nevertheless, the trial court concluded that respondents had proved by clear and convincing evidence that decedent did not sign the alleged will. Assuming, but not deciding, that the trial court placed the burden of persuasion on respondents and assuming, but not deciding, that the burden of persuasion was by clear and convincing evidence, that burden was met.

■ Under the assumptions in the preceding paragraph, we are to view the evidence in the light most favorable to the prevailing party and to determine therefrom if the trial court could properly have reached an abiding conviction as to the truth of the facts found. *Duke City Lumber Co. v. Terrel*, 88 N.M. 299, 540 P.2d 229 (1975).

The trial court found that the testimony of respondents' expert witness, and other testimony, was persuasive. It also found: "The total testimony of the Respondents was of such weight that it would have satisfied the criminal evidence requirement of beyond a reasonable doubt." The trial court could properly arrive at this view on the basis of respondents' evidence. There was the detailed evidence of the expert, giving reasons for his opinion, that decedent did not sign the alleged will. There was testimony discrediting the testimony of the attesting witnesses. This testimony went to whether these witnesses were actually present on the day they said the decedent signed the will.

Our discussion in this issue has not decided whether proof of due execution must be proved by a preponderance or by clear and convincing evidence. The reason is there is no issue in this appeal as to the quantum of proof to show due execution of the will. However, *see* NMSA 1978, UJI Civ. 3.6 (Repl.Pamp.1980) and § 45–3–406.

■ The trial court did not err in its finding that decedent did not sign the will.

## SUBJECT MATTER JURISDICTION

The judgment of June 4, 1984, denied probate of the alleged will, ruled that decedent died intestate, and ruled that distribution of decedent's estate should be in accordance with the law of intestate succession. Price, in open court, immediately filed a notice of appeal from the June 4, 1984, judgment. She claims the trial court lacked subject matter jurisdiction to decide the motion for attorney fees once the notice of appeal was filed. Price relies on *Luna v. Homestake Mining Co.*, 100 N.M. 265, 669 P.2d 741 (Ct.App.1983).

In *Homestake* a judgment of July 20, 1982, awarded attorney fees. On August 12, 1982, plaintiff moved to amend the judgment by increasing the amount of attorney fees. On August 13, 1982, defendant filed a notice of appeal. On September 27, 1982, the trial court amended the judgment by increasing the award of attorney fees. *Homestake* held that plaintiff's motion to amend the judgment was not timely and the trial court lost jurisdiction to rule on the motion to amend upon the filing of the notice of appeal from the final judgment. *Homestake* is not applicable. In this case there was no motion to amend the judgment.

Respondents, in turn, rely on the statement in *State v. White*, 71 N.M. 342, 378 P.2d 379 (1962), that the trial court loses jurisdiction, once a notice of appeal is filed, "except ... for the purpose of passing upon motions pending when the appeal is taken ...." *See also State ex rel. Bell v. Hansen Lumber Co.*, 86 N.M. 312, 523 P.2d 810 (1974). These cases involved motions to amend a judgment under NMSA 1978, Civ.P.Rule 59 (Repl.Pamp.1980). Inasmuch as NMSA 1978, Civ.App. Rule 3(d) (Repl.Pamp.1984) now provides for suspending the finality of a judgment in connection with Civ.P.Rule 59 motions, but did not when *White* was decided, there is a question as to whether the statement in *White* is applicable. It is unnecessary to decide that question in this case.

■ A judgment is not final "unless all issues of law and of fact necessary to be determined have been determined, and the case has been completely disposed of to the extent the court has power to dispose of it.... To determine whether an order is final, we will give the term 'finality' a practical, rather than a technical construction." *Clancy v. Gooding*, 98 N.M. 252, 254, 647 P.2d 885 (Ct.App.1982) (citations omitted). We look to the substance, not the form, of the judgment sought to be appealed. "Where no further judicial action on the part of the court is essential, then the decree entered by the court is a final one ...." *Rio Arriba County Board*

*of Education v. Martinez*, 74 N.M. 674, 678, 397 P.2d 471 (1964) (citations omitted).

The June 4, 1984, judgment was not a final judgment, for several reasons.

(1) Special administrators had been appointed "to preserve the estate and to secure its proper administration until such time as a general Personal Representative is appointed ...." Both Price and Foster had petitioned the court that a personal representative be appointed. Such an appointment was delayed until it was decided whether decedent died intestate.

(2) The trial on the question of whether the alleged will should be admitted to probate concluded in April 1984. The June 4, 1984, judgment went only to this issue. After the trial was concluded several motions were filed, and were pending at the time of entry of the June 4th judgment. Price moved for a supervised administration and that any personal representative appointed be required to furnish bond. Foster renewed his petition for appointment as personal representative. Respondents moved for a partial distribution of the estate. Price moved that special co-administrator Moore render a full accounting as to the ranching operations and that she be awarded compensation for her services as a special co-administrator. Respondents moved that an accounting be required from special co-administrator Price and that Moore be awarded compensation for his services. The motion for an award of attorney fees was also filed.

(3) The court proceedings reflect that further proceedings were contemplated on the day the June 4, 1984, judgment was filed. The trial court pointed out that a personal representative needed to be appointed; it referred to the motion for partial distribution; it remarked there was a need to get something done; that it would start hearing the pending motions that day (June 4) and continue on June 5, 1984; "I will give you whatever time you need to finish this up." Hearings were held on those days. The trial court's order of June 14, 1984, dealt with the personal representative and termination of the special co-ad-

ministrators. Its order of June 19, 1984, granted the motion for attorney fees, denied the motion for partial distribution, directed Price to provide an accounting for her activities as special co-administrator and held the question of compensation for the co-administrators in abeyance. Price filed an amended notice of appeal on June 28, 1984. The amended notice appealed from the judgment of June 4, 1984, and the orders of June 14 and 19, 1984.

The issues in this intestate matter had not been completely disposed of on June 4, 1984; further proceedings were necessary. The final judgment in this appeal did not occur until the order of June 19, 1984. The trial court had jurisdiction to decide the question of attorney fees on June 19, 1984.

## AUTHORITY TO AWARD ATTORNEY FEES

This issue involves a jurisdictional question—the authority of the trial court to award attorney fees. *Heckathorn v. Heckathorn*, 77 N.M. 369, 423 P.2d 410 (1967). Price does not challenge the amount of the fee award as excessive. She does not contend that the award was based on services unrelated to opposing probate of the alleged will. The trial court found that respondents provided a substantial benefit to the estate by preventing the false will from being admitted to probate "and prevented the estate ... from being distributed unlawfully, and they are therefore entitled to a reasonable attorney's fee out of the estate." Price asserts that no substantial benefit was provided to the estate and therefore the trial court lacked authority to make the fee award. Respondents state that equitable considerations authorize a fee award in this case.

The general rule is that attorney fees may not be awarded in the absence of a statute or rule of court. *Aboud v. Adams*, 84 N.M. 683, 507 P.2d 430 (1973).

In the case of *In Re Ferrill*, 99 N.M. 503, 660 P.2d 593 (1983), attorney fees were approved for a special administrator who hired an attorney to defend, in good faith, a contested will. The fees were held to be authorized by statutory provisions cited in the opinion. *Ferrill* is not applicable to this case. Respondents did not defend the alleged will, they challenged it. Price has sought attorney fees only for her services as special administrator. She offered the alleged will for probate and defended it, but as an individual and not as special administrator. We add that Moore, one of the respondents, but also a special administrator, does not defend the fee award in contention on the basis of his position as special administrator.

*In Re Hamilton*, 97 N.M. 111, 637 P.2d 542 (1981), holds that attorney fees may not be allowed out of the estate for services rendered in personal suits between the heirs. This case is not a personal suit between heirs. This case is concerned with the propriety of an award of attorney fees for services rendered in opposing an alleged will held not to have been duly executed.

*Gregg v. Gardner*, 73 N.M. 347, 388 P.2d 68 (1963), involved the construction of the will and the declaration of rights of parties under the will. There was no issue as to the validity of the will; the issue was how the will disposed of the property. In holding that attorney fees were not authorized, *Gregg* refers to a general rule that

> denies the right to an allowance of an attorney fee out of an estate to an attorney whose services were rendered on behalf of an interested individual or group of individuals without employment by the personal representative of the estate.... There are exceptions to the general rule discussed in the annotations cited above [79 A.L.R. 522; 142 A.L.R. 1459], one of which we adopted in *Merrick v. Deering* [30 N.M. 431, 236 P. 735 (1925)], but the instant case does not come within them.

73 N.M. at 361 (citations omitted). This case does not involve construction of a valid will; the facts in *Gregg* are not applicable. The importance of *Gregg* to this

case is the recognition of exceptions to the general rule.

The annotations to which *Gregg* refers state an exception where a will is so ambiguous it is advisable to bring suit to obtain a construction of the will. But there are limitations to the exception. One limitation is where the suit is for the sole benefit of the claimant and not for the interest or benefit of the estate. We understand *Gregg* as applying this limitation. This exception is not applicable because no will is being construed in this case.

Another exception, followed in *Merrick v. Deering,* is described in *Gregg:* "[A]n attorney fee was allowed on behalf of lawyers who had brought large sums into a trust through litigation involving construction of a will." 73 N.M. at 360–61, 388 P.2d 68. Again no will is being construed. Although no sums have been brought into the estate in this case, the reference to this result involves benefits to the estate.

*Gregg* also refers to *Las Vegas Railway & Power Co. v. Trust Co. of St. Louis County,* 17 N.M. 286, 126 P. 1009 (1912). *Las Vegas* recognized an equitable doctrine, well established that

"where one of many parties having a common interest in a trust fund, at his own expense takes proper proceedings to save it from distribution and to restore it to the purposes of the trust, he is entitled to reimbursement, either out of the fund itself, or by proportional contribution from those who accept the benefits of his efforts."

*Id.* at 291, 126 P. 1009. Application of this exception was denied in *Las Vegas* on the basis that there was no benefit to the common fund. It is the recognition of this exception, an equitable doctrine, that is of importance to this case.

Annot., 40 A.L.R.2d 1407, 1448 (1955) discusses cases where "one successfully contesting an alleged will has been held entitled to recover his counsel fees from the estate on the theory that the contest benefited the entire estate, which therefore should bear the burden of the expense."

▮▮▮ An exception exists which authorizes an award of attorney fees for services rendered which confer a benefit upon the estate. We have pointed out that this exception has been recognized in New Mexico decisions and is an equitable doctrine. The recognition of the equitable doctrine in New Mexico decisions was not on the basis that authority for the recognition could be found in a statute or rule of court; rather, the doctrine was recognized without regard to statute or rule of court. Our Probate Code, however, obviates considering the exception as independent of authority conferred by statute or rule of court. Section 45–1–103 states: "The principles of law and equity supplement the Probate Code's provisions, unless specifically displaced by particular provisions of the code." This exception, an equitable doctrine, supplements the Probate Code's provisions concerning an award of attorney fees because the doctrine is not specifically displaced by code provisions. *See In Re Estate of Brown,* 137 Ariz.App. 309, 670 P.2d 414 (1983).

The exception, which permits an award of attorney fees, requires that the entire estate be benefited. Price contends that respondents' contest of the alleged will did not benefit the estate. She asserts the contest "did not increase the assets or protect the assets of the estate in any manner." According to Price, "the only thing they [respondents] did was to have themselves declared heirs entitled to share in the estate."

▮▮▮ We agree with Price that respondents did not increase the assets of the estate. No money or other assets were brought into the estate by the litigation. *See Merrick v. Deering,* as explained in *Gregg.* We also agree that the result of this litigation will result in respondents sharing in the estate as heirs. We do not agree that the litigation did not protect the assets of the estate in any manner. As a result of the litigation, the estate will be distributed to heirs in accordance with the law pertaining to intestacy. The litigation protected the assets of the estate from being distributed pursuant to an invalid

will. The trial court found that preventing the estate from being distributed unlawfully was a substantial benefit. We agree.

 *In Re Wilmott's Estate,* 66 So.2d 465, 470 (Fla.1953), states: "The services of counsel in preventing distribution under invalid instruments must be held to confer a benefit upon the estate." *In Re Estate of Katschor,* 637 P.2d 855 (Okl.1981), considers this statement too broad, fearing it will lead to awards of attorney fees on the basis that unsuccessful contestants have conferred a benefit to the estate. We do not share that fear. The award being equitable depends on the facts of the case and the exercise of equitable power must be used with discretion. An award of attorney fees is not automatic even if there is no dispute about the benefit. *See In Re Estate of Brown.*

The reason why services preventing probate of an invalid will are a benefit to the estate is set forth in *In Re Limberg's Estate,* 257 App.Div. 827, 11 N.Y.S.2d 908, 909 (1939):

> The estate is now being administered and is to be distributed in accordance with the statutes governing intestacy. All of those who will share in such distribution have been benefited by reason of the services of the attorneys-appellants. Thus these services conferred a benefit upon the estate, for an estate cannot be considered simply as a mass of property irrespective of and divorced from those who are entitled to share therein. If an allowance out of the general assets were denied, an anomalous situation would ensue. A contestant would then have to bear the expense for the attorneys' fees out of his own share despite the fact that his efforts resulted in equal benefit to all remaining distributees, who would thereupon profit by their inaction.

In this case respondents have benefited themselves as heirs, and also benefited Price as an heir, although the result is a detriment to Price as the sole devisee under the false will. This was a benefit to the entire estate.

Our holding is consistent with *Las Vegas* which refers to the restoration of funds for the purposes of a trust (here preserving an estate for distribution in accordance with law). Our holding is also consistent with *Carabajal v. Candelaria,* 65 N.M. 159, 161, 333 P.2d 1058 (1958), which refers to the prevention of waste of the assets of a private corporation and holds that attorney fees may be awarded "where the unlawful expenditure of public funds has been prevented."

The judgment of the trial court is affirmed. Price shall bear the appellate costs.

IT IS SO ORDERED.

DONNELLY, C.J., and ALARID, J., concur.