OPINION OF THE COURT
Howard Miller, J.
This is an application by the Commissioner pursuant to CPL 330.20 (11) to transfer Mr. Neal E. from Mid-Hudson Psychiatric Center to a nonsecure facility. The District Attorney has not appeared in this proceeding.
Mr. E. has a long history of psychiatric hospitalizations commencing in 1978, when Mr. E. was 18 years old. After his discharge from Kingsboro Psychiatric Center on June 22, 1983 (after being found "not dangerous to himself or others”), Mr. E. brutally battered his mother to death with a hammer on May 26, 1984. Thereafter followed six admissions to Mid-Hudson pursuant to CPL 730.50, each admission lasting for periods of one to eight months. Each time Mr. E. was returned to court upon the disposition recommendation of Rogelio Roncal, M.D., who found him competent to stand trial. Each time, within a few months of discharge from Mid-Hudson, Mr. E. was returned due to his deteriorating condition. After being found not guilty of the murder of his mother by reason of mental illness, Mr. E. was admitted to Mid-Hudson on June 24, 1991.
On July 17, 1991 Dr. Roncal concluded that Mr. E. was suffering from a dangerous mental disorder, and his opinion remained unchanged in a December 30, 1991 report. By May 26, 1992, however, the treatment team concluded that Mr. E. was no longer dangerously mentally ill and Dr. Roncal recommended his transfer to a nonsecure facility. The Hospital Forensic Committee disagreed and would not recommend transfer.
*956 On August 25, 1992, the treatment team again concluded Mr. E. was no longer dangerously mentally ill and Dr. Roncal recommended his transfer to a nonsecure facility. Although Dr. Malik concurred with Dr. Roncal, Drs. Lawrence Glass and Manouchehr Lavian of the Hospital Forensic Committee disagreed and transfer was not recommended.
On December 2, 1992, Dr. Roncal and the treatment team again recommended transfer. At that time the Hospital Forensic Committee physicians were Dr. Malik and Dr. Caoili. Apparently neither Dr. Glass nor Dr. Lavian were present, nor does the record indicate whether they were consulted. The Committee recommended transfer.
As a result of the Committee recommendation, the Commissioner brought this proceeding to transfer Mr. E. to a nonsecure facility. On April 21, 1993 a hearing was held. The only evidence before the court is the testimony of Dr. Rogelio Roncal and the hospital record. Dr. Roncal testified that he considered Mr. E. no longer a danger to himself or others and suitable for transfer to a nonsecure facility.
Since 1984, Dr. Roncal found Mr. E. competent to stand trial on six occasions; each time Mr. E.’s condition deteriorated upon leaving Mid-Hudson. Three times Dr. Roncal’s recommendation for transfer was heard by the Hospital Forensic Committee; twice it was denied. A review of the hospital record and, in particular, the progress notes, illustrates a sharp contrast between the progress notes authored by Dr. Roncal and those of other staff members.
Since two psychiatrists (Drs. Glass and Lavian) felt transfer inappropriate as recently as September of 1992, it is imperative to examine the hospital record to determine what has taken place since that time which would support Dr. Roncal’s opinion that Mr. E. is no longer dangerously mentally ill.
The hospital record indicates that throughout September 1992, Mr. E. expressed a reluctance to take medications for his kidneys, stating to staff at one point that "I don’t care if I die.” In October Mr. E. still failed to demonstrate any remorse for his past acts. In November Mr. E. "seems to understand his mental illness, but at time [sic] will act delusional, thinking that he is Chinese”; or "feels that he is mentally ill, but does not seem to really understand what mental [sic] ill is”. In December Mr. E. "continues to feel that he is not mental [sic] ill”. From December of 1992 and consistently through February of 1993, Mr. E. would advise staff that he was, or was not, *957 mentally ill, depending on the person or persons to whom he was speaking. The notes indicate that even when Mr. E. acknowledged that he was mentally ill, his insight was limited. In March of 1993 staff indicates that Mr. E. "has no insight into his mental illness, but takes medication.” In sharp contrast to the progress notes of staff are the progress notes of Dr. Rogelio Roncal, which uniformly reflect that Mr. E. accepts that he is mentally ill.
According to the hospital record, Mr. E., so long as he is taking his medications, is not a behavioral or management problem. It is apparently this docility which has led the Committee and Mid-Hudson to seek his transfer, since the Committee’s previous criteria — that Mr. E. acknowledge and gain insight into his mental illness — has not been demonstrated.
There is no credible evidence to support a finding by this court that the defendant is not dangerously mentally ill or that his transfer is consistent with public safety and the welfare of the community. On the contrary, the hospital record is replete with evidence that this defendant, upon release from Mid-Hudson, has on numerous occasions in the past suffered a regression in his condition; that his comprehension of his mental condition, as observed by the staff on a daily basis, has not improved; and that the hospital has, as recently as February 14, 1992, required a court order to administer Mr. E. medication over his objection.
The testimony of Dr. Roncal, standing alone, is insufficient to support the necessary findings by this court, particularly since his opinion is in sharp contrast with the observations of staff and the opinions of two other psychiatrists at Mid-Hudson as recently as September of 1992. The weight to be accorded expert testimony is a matter for the trier of fact (Matter of Sylvestri, 44 NY2d 260; Topel v Long Is. Jewish Med. Ctr., 76 AD2d 862, affd 55 NY2d 682). The court is not required to accept the entirety of an expert’s testimony, even when it is uncontradicted (Halvorsen v Ford Motor Co., 132 AD2d 57, lv denied 71 NY2d 805) or where the expert’s opinion conflicts with the established facts (Matter of Slade, 106 AD2d 914).
It should be noted that the Insanity Defense Reform Act of 1980 placed upon the District Attorney the burden of proof that the defendant has a dangerous mental disorder or is mentally ill, or that the issuance of a transfer order is *958 inconsistent with the public safety and welfare of the community (CPL 330.20 [9]). If the court makes a finding that the defendant does not have a dangerous mental disorder, or finds that the issuance of a transfer order is consistent with public safety and welfare of the community, the court must order the transfer. In making its findings, the court is not limited to the proof, or lack thereof, proffered by the District Attorney. Had the Legislature intended that the District Attorney’s failure to oppose a defendant’s transfer was, ipso facto, sufficient to warrant transfer, there would have been no need for any application to the court, nor would the court be required to make any findings. The mere fact that the District Attorney, for whatever reason, fails to oppose the motion is not dispositive and this court will not affix its signature to an order unless it is satisfied that the defendant is no longer dangerously mentally ill or that the public safety and community welfare will not be endangered.
It is incumbent upon the court, particularly when the District Attorney fails to offer any proof, to scrutinize the record for evidence sufficient to support the findings it is required to make under CPL 330.20 (9).
In this case there is no evidence, other than the testimony of Dr. Roncal (which the court does not credit), to support any findings other than that the defendant continues to be dangerously mentally ill and his transfer is inconsistent with public safety and the welfare of the community.